STATE, Respondent, *v.* DAW, Appellant.
(No. 7,340.)
(Submitted March 4, 1935. Decided March 13, 1935.)
[43 Pac. (2d) 240.]

(232)

234

*Messrs. Taylor & McLean,* for Appellant, submitted a brief; *Mr. George W. McLean* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, *Mr. C. J. Dousman,* Assistant Attorney General, and *Mr. E. C. Kurtz,* County Attorney of Ravalli County, for the State, submitted an original and a supplemental brief; *Mr. Dousman* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On an information charging that he did "unlawfully, feloniously and wrongfully, with * * * a 12-gauge shotgun loaded with lead and powder, * * * shoot, wound and inflict grievous bodily harm upon * * * Francis Sargent," Elgin Daw was convicted of the crime of assault in the third degree, and thereon was sentenced to a term of five months in the Ravalli county jail. Daw has appealed from the judgment.

The record presented consists of the judgment-roll, a bill of exceptions and notice of appeal. This record discloses that the appellant failed to comply with the requirement that a bill of exceptions "must" be presented "upon notice of at least two days to the adverse party" (sec. 12044, Rev. Codes 1921), and that the county attorney appeared at the settlement for the sole purpose of objecting to the settlement on the ground that the court was without jurisdiction to do so.

The above statute is mandatory, and unless the record on appeal shows affirmatively that such notice was given, the bill of exceptions will not be considered. (*State* v. *Gawith,* 19 Mont. 48, 47 Pac. 207; *State* v. *Moffatt,* 20 Mont. 371, 51 Pac. 823; *State* v. *Stickney,* 29 Mont. 523, 75 Pac. 201.) This is necessarily so. "The reason for the rule announced in the

cases above is apparent. After the county attorney receives notice that the proposed bill will be presented for settlement, he has from that time until the settlement of the bill * * * within which to propose amendments; if he has not this notice, he has no knowledge of the time within which he must propose his amendments. In any event, the law in unmistakable language requires the notice to be given." (*State* v. *Kremer*, 34 Mont. 6, 85 Pac. 736, 737; see, also, *State* v. *Valie*, 82 Mont. 456, 268 Pac. 493.)

In the *Kremer Case* this court held that, notwithstanding the fact that it could not consider the bill of exceptions, it could consider questions relating to the refusal of the trial court to give offered instructions as these appear in the judgment-roll. This opinion was rendered in 1906. Chapter 82, section 1, Laws of 1907 (now sec. 11969, Rev. Codes 1921), prescribes the rules to be followed in the settlement of instructions. It is then provided that "no cause shall be reversed by the supreme court for any error in instructions which was not specifically pointed out and excepted to at the settlement of the instructions herein specified, and such error and exception incorporated in and settled in the bill of exceptions, as herein provided." Under this Act, error in the instructions given cannot be reviewed on appeal (*State* v. *Cook*, 42 Mont. 329, 112 Pac. 537; *State* v. *Thomas*, 46 Mont. 468, 128 Pac. 588), and this is so, although "the instructions constitute a part of the judgment-roll or technical record." (*State* v. *Carmichael* 62 Mont. 159, 204 Pac. 362, 363.) But does the Act prohibit consideration of errors alleged to have been committed in refusing to give offered instructions?

A careful examination of the applicable statutes indicates that the legislature intended to make the provision here considered applicable only to the errors committed in the charge to the jury, for it has declared that "the record on appeal in a criminal case shall consist of the judgment-roll as defined in section 12074 of this code, a copy of the notice of appeal and all bills of exceptions settled and filed in the case." (Sec. 12045, Rev. Codes 1921.) The judgment-roll consists of "1.

The indictment or information, and a copy of the minutes of the plea or demurrer. 2. A copy of the minutes of the trial. 3. The charges given or refused, and the indorsements thereon. 4. A copy of the judgment.'' (Sec. 12074, Id.)

The ''indorsements'' on ''the charges given and refused'' are made by the court at the time of settlement, and consist of annotations from which ''it shall distinctly appear what instructions were given in whole or in part, * * * those refused or modified, and if modified, wherein the modification consisted.'' (Sec. 11969, above.) The objections and exceptions and the court's rulings thereon are written out and ''filed with the clerk'' of the court. (Sec. 11969.) Thus it appears that, from the judgment-roll, this court may determine what offered instructions were refused and which were given, but the objections and exceptions ''specifically pointed out'' at the settlement will not appear therein, as section 12074 excludes them from the judgment-roll, unless they be a part of ''the minutes of the trial,'' and, even if they be considered within the minutes of the trial, and therefore a part of the judgment-roll, they cannot be considered for the purpose of reversing a judgment, for the statute so declares. (*State* v. *Libby Yards Co.*, 58 Mont. 444, 193 Pac. 394.)

However, section 12041 (enacted as section 15, Chap. 225, Laws of 1921), relieves a party to a criminal action from excepting to any ruling of the trial court relating to instructions on the settlement thereof, and, consequently, no exception need be taken and incorporated in a bill of exceptions, with respect to the court's refusal to give an offered instruction. Nor need the ''objections'' to an offered instruction, thereafter refused, be incorporated in a bill of exceptions prepared by the party whose offered instruction is refused, for the appellate court is not interested in determining whether or not proper objections were interposed to the instruction, as is the case when an instruction given is challenged, but is only interested in the question whether or not the offered instruction should have been given.

In this connection the wording of the prohibitions contained in section 11969 is significant: First, it is declared that "no motion for new trial on the ground of errors in the instructions given shall be granted * * * unless the error so assigned was specifically pointed out * * * at the settlement"; second, "no cause shall be reversed * * * for any error in instructions which was not specifically pointed out * * * and such error * * * incorporated in and settled in the bill." The "error in instructions" mentioned clearly means error in charging the jury, in which, of course, refused instructions do not appear.

The first prohibition above leaves the trial court in a position to grant a new trial for error in refusing instructions without regard to section 11969, and, under the second prohibition, this court is in the same position. Formerly California's section on the contents of the judgment-roll did not provide for making "the charges given and refused" a part thereof, and thereunder it was held that errors in the charge could only be brought up on a bill of exceptions, but that, it appearing from the minutes of the court, a part of the judgment-roll, that the court had instructed the jury orally and later gave further instructions in the absence of the defendant's counsel, these questions were presented by the judgment-roll, and for the errors committed the court could, and did, reverse the judgment. (*People* v. *Trim,* 37 Cal. 274.) The situation there is analogous to that before us.

Herein the court gave certain instructions on the law of self-defense and refused to give others offered by the defendant; error is assigned on the refusal to give instructions as well as upon alleged errors in the instructions given. Without regard to the bill of exceptions, improperly settled, it is apparent from the instructions given that the evidence warranted instructions on the right of self-defense, or they should not have been given. Now, while we are forbidden to reverse this judgment because of "any error in instructions," we may examine the instructions appearing in the judgment-roll for the purpose of determining whether or not the jury

was properly instructed on this subject, and therefore whether error was committed in refusing the offered instructions, for, no matter how proper the offered instructions may be, we cannot say they should have been given unless we examine the instructions given to determine whether the offered instructions were properly covered by those given.

Four of the five instructions given on this subject predicate ██ the right of self-defense on the necessity of repelling an actual act of violence; thus, "the use of a deadly weapon * * * in self-defense is justifiable or excusable when, and only when, it is necessary, or reasonably necessary, to defend against death or great bodily harm"; and again: "In order to prevent an assault upon himself, his family or his home, one may use so much force as is reasonably necessary to stay the act of violence; * * * if he use more force than is necessary for that purpose, then he becomes the aggressor and is himself guilty of an unlawful assault."

But one of these instructions, No. 16, contains a reasonably accurate statement of the law of self-defense, and it closes with the declaration which carries the thought, running through all of the instructions given, that an act of violence by the defendant is justified only when it is necessary in order to stay an act of violence; it closes, "He may use only such force as is reasonably necessary to stay the act of violence against him, his family or a member thereof." Having adopted this theory of the law of self-defense, the court refused to give such instructions as: "If a person is assaulted in such a way as to induce in him a reasonable belief of danger of losing his life or suffering bodily harm, or that his family or a member thereof may suffer bodily harm, or his home is threatened, he will be justified in defending himself, though the danger be not real, only apparent." The Attorney General, in his brief, concedes that the offered instructions correctly state the law, but asserts that they are covered by the instructions given; we would suggest that the word "great" should precede "bodily harm" in the offered instruction. It is true that instruction No. 16, to which reference is made

above, might have accomplished this purpose, had it not been for the quoted closing clause, and on the instructions as a whole the jury could not have believed otherwise than that, in order to excuse the defendant and return a verdict of not guilty, the jurors must find that his act of shooting was necessary to "stay the act of violence against him," and "defend himself against death or great bodily harm."

In this jurisdiction the law of self-defense is applied in assault cases, just as in homicide cases. (*State* v. *Totten*, 65 Mont. 203, 210 Pac. 1061.) Although the statutes defining the right of self-defense differ with respect to homicide (sec. 10965, Rev. Codes 1921) and assault (sec. 10980, Id.), we think this rule should apply, at least in such a case as this. When a person shoots another with a deadly weapon "loaded with lead and powder," it is his good fortune that the other recovers, and he is thereafter prosecuted for assault instead of murder, but the mere fact of the victim's recovery should not alter the rule as to the right of self-defense. It is that "a person assailed may act upon appearances as they present themselves to him, meet force with force, and even slay his assailant; and, though in fact he was not in any actual peril, yet if the circumstances were such that a reasonable man would be justified in acting as he did, the slayer [or person assaulting another under such circumstances] will be held blameless." (*State* v. *Merk*, 53 Mont. 454, 164 Pac. 655, 658; *State* v. *Houk*, 34 Mont. 418, 87 Pac. 175.) An instruction which fails to measure the apparent danger by the judgment which would have been exercised by a reasonable man is erroneous. (*State* v. *Sloan*, 22 Mont. 293, 56 Pac. 364; *State* v. *Jennings*, 96 Mont. 80, 28 Pac. (2d) 448.) Therefore, the court, having instructed the jury on an erroneous theory, erred in refusing to give instructions embodying the true theory of self-defense.

Error is specified on the court's refusal to give a lengthy instruction on the subject of the rights of a party resisting the attack of rioters. If the evidence discloses a tumultuous trespass by three or more persons seeking to commit an unlawful act, those constituting the assemblage may be

termed "rioters" (*Patten* v. *People*, 18 Mich. 314, 100 Am. Dec. 173), and, in connection with the instructions on the right of self-defense, the court should point out to the jury the essential difference between an assault by such a body of men, and that by an individual. (*Higgins* v. *Minaghan*, 78 Wis. 602, 47 N. W. 941, 23 Am. St. Rep. 428, 11 L. R. A. 138.) The offered instruction is based on the remarks of the appellate court on the subject in the *Higgins Case;* it is rather prolix and argumentative as an instruction and, for that reason, the court may have been justified in refusing it. On a retrial, if the evidence warrants such an instruction it should be modeled along the lines of the instruction approved in the Wisconsin case, eliminating the remarks of the court.

It appears from the judgment-roll that the defendant was either guilty of assault in the second degree or was guilty of no crime. He was found guilty of a simple assault, which would indicate that the jury was of the opinion that he was not guilty as charged but that, under the instructions given, it was their duty to find him guilty of some offense, as "self-defense" was not available to him, and, as the court instructed them on the several degrees of assault, they were as lenient with the defendant as the instructions would permit. Such a verdict should not be permitted to stand; the defendant should have a fair trial on which the jury is fully instructed on the right of self-defense, and, unless the evidence discloses a situation negativing an intention to shoot the injured party with a "shotgun loaded with lead and powder," the defendant should either be acquitted on the ground of self-defense, or convicted of assault in the second degree.

The judgment is reversed and the cause remanded to the district court of Ravalli county for a new trial.

Associate Justices Stewart, Anderson and Morris concur.

Mr. Chief Justice Sands, being absent on account of illness, takes no part in the foregoing decision.