THE STATE OF MONTANA, Plaintiff and Respondent, v.
VICTOR AHL, Defendant and Appellant.

No. 10252.

Submitted November 7, 1961. Decided April 10, 1962.

Rehearing Denied May 14, 1962.

371 P.2d 7.

Leo J. Kottas, Helena (argued orally), for appellant.

Robert M. Holter, County Atty., Bozeman, Forrest H. Anderson, Atty. Gen., Helena, James Sinclair, Deputy Atty. Gen. (argued orally), Douglas R. Drysdale, Bozeman (argued orally), for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

An appeal by the defendant, Victor R. Ahl, on a judgment. of conviction of grand larceny in the District Court of the Eighteenth Judicial District, in and for the County of Gallatin.

The defendant was a car dealer in Bozeman, Montana, and had over a number of years purchased cars for one Dr. F. I. Sabo of the same city. During the period he had also borrowed money from Dr. Sabo in amounts of $200 twice, and $850, all of this prior to the check in question. Concerning the check in question, the record shows that on March 15, 1960, Dr. Sabo contacted the defendant in an effort to get a car for his wife, who was then in the State of Minnesota. Concerning this transaction, Dr. Sabo testified he got in touch with the defendant, told him what his needs were, and that they went to his home where a long distance telephone call was made to Minnesota. A summary of Dr. Sabo's testimony shows that the defendant contacted a car dealer in Minneapolis who had a 1958 Cadillac that suited the doctor and that after several calls the deal was closed and arrangements were made to deliver the car to Mrs. Sabo in Minneapolis. Testimony also reveals that on the same day, Dr. Sabo gave the defendant a check in the amount of $2,950, this being the amount that the defendant stated the dealer in Minneapolis wanted for the car.

On the left-hand corner of the check was written, after the printed word "for": "1958 Cad. loan." When the check was cashed and returned by the bank to Dr. Sabo, he testified that

he was surprised to see the word "loan" written on same though he never denied that it was in his handwriting; that after he got the check he crossed out the word "loan" and wrote over it, the word "advanced". He stated that he did this for his own bookkeeping system. Several weeks later Dr. Sabo to his surprise and chagrin, learned that it was necessary for him to pay an additional $2,950 on the 1958 Cadillac his wife was driving plus some charges to the Minneapolis dealer. The record revealed that the doctor made efforts to find out what had happened to his first $2,950 and learned that the money had been spent by the defendant in the purchase of other automobiles. After a number of meetings between the doctor and the defendant, covering a period from April to August, the doctor turned the matter over to the county attorney, who filed an information on August 19, 1960, charging larceny. The case was tried before a jury commencing on October 31, 1960, and ran for a period of two days during which the defendant testified. At no time did the defendant deny that he made the telephone call to Minneapolis, that he received the check from the complaining witness, but his defense was that it was a loan instead of a payment for the 1958 Cadillac. The main question before the jury was whether or not the check in the amount of $2,950 given the defendant for the 1958 Cadillac was a loan to the defendant or was a payment for the two year old car.

The defendant set forth the following specifications of error:

1. The verdict is contrary to the evidence.

2. The court erred in permitting a witness to vary a written instrument by parol testimony.

3. The court erred in denying the defendant's motion for the court to order the jury to return a verdict of not guilty.

4. The court erred in failing to give the defendant's proposed instruction No. 10.

5. The court erred in failing to give proposed instruction No. 12.

6. The court erred in failing to give proposed instruction No. 13.

The jury properly considered all the evidence and in this case did not believe the defendant, rather it chose the testimony of Dr. Sabo. This matter was tried for a period of two days and the transcript reveals considerable conflict in the testimony between Dr. Sabo and the defendant but all of these matters were before the jury, they had an opportunity to see all of the witnesses, to hear the testimony, to study the documents in question and chose to believe Dr. Sabo in this matter. This court has said in previous cases, the latest State v. Strobel, 130 Mont. 442, 304 P.2d 606:

"The jury evidently rejected the testimony of the defendant and accepted the evidence offered by the State. This it had a right to do. [Citing cases.]

"Other testimony on behalf of the defendant which is urged in appellant's brief as warranting a reversal of the judgment created sharp conflicts in the evidence, all of which were by the verdict resolved against the defendant. 'Disputed questions of fact and the credibility of witnesses will not be considered on appeal. Determination of such matters is within the province of the jury, and so long as there is substantial evidence to support the verdict, it cannot be disturbed on appeal.' State v. Messerly, 126 Mont. 62, 69, 244 P.2d 1054, 1057.''

█ Concerning specification 2, we find defendant's exception without merit. This court in the case of State v. Lund, 93 Mont. 169, 18 P.2d 603, set forth the rule with regard to parol evidence and applicable in cases such as this in  these words:

"The contention of the defendant that the admission of the oral testimony concerning negotiations relating to the transfer of Western Loan stock was in conflict with the writings, and therefore a violation of the parol evidence rule, we think needs no extended discussion. * * * It

would be extending the rule with regard to parol testimony far beyond its accepted interpretation to say that in case of fraud the state may not, in proper cases, show by parol facts to negative the existence of the alleged contract. Section 7531, Rev.Codes 1921 [now R.C.M.1947, § 13-706]; People v. Kelley, 81 Cal.App. 398, 253 P. 773; People v. Robinson, 107 Cal.App. 211, 290 P. 470; People v. Martin, 102 Cal. 558, 566, 36 P. 952.''

Concerning specification 3, the defendant relies on the case of State v. Karri, 51 Mont. 157, 149 P. 956, L.R.A.1916F, 90. This case established under a different set of circumstances, that such a transaction as this where a check was given under an agreement where it would be used in his business for cashing miner's checks and to be repaid on a certain day that the transaction amounted to a loan for exchange rather than a bailment. The Karri case however is not the same factual case as the present case where the testimony reveals that the defendant made the arrangements to get the car for Dr. Sabo; that the amount the dealer in Minneapolis said over the telephone was $2,950; that the check was given to him to pay for said car, such admissions constitute an admission by the defendant that the title was still in Dr. Sabo; that he was a bailee of the money or an agent to procure the Cadillac from a third person. This fact was totally lacking in the Karri case for there was no dealing with a third person.

In the case of Ferry & Co. v. Forquer, 61 Mont. 336, 202 P. 193, 29 A.L.R. 642, this court had the following to say concerning bailment: "A bailment is a delivery of personal property in trust upon a contract, express or implied, that the trust shall be executed faithfully on the part of the bailee. 2 Bl.Com. 451; 2 Kent's Com. 558; Story on Bailments, § 2. Some of the early definitions apparently contemplated that the thing bailed should be returned in specie, but the preponderant authority and better reasoning support the rule that upon the termination of the bailment, the identical thing bailed, or the product of or

substitute for that thing, together with the increments, earnings and gains which may have accrued to it during the period of the bailment, must be re-delivered, delivered over, or accounted for by the bailee in accordance with the terms of the contract. 6 C.J. 1139.''

Here the testimony reveals that defendant admitted title in Dr. Sabo, that he accepted and took custody of the check, and agreed that the money was to pay for the 1958 Cadillac. The essential elements of a bailment having been established the court properly refused the defendant's motion for an order to the jury to return a verdict of not guilty.

The refusal to give defendant's proposed instructions 10 and 12 was not error. In the first place both instructions were repetitious, and with regard to 12, the record reveals that defendant's counsel agreed to the giving of instructions 23 in preference to his proposed instruction number 12.

See State v. Allison, 122 Mont. 120, 141, 199 P.2d 279, 291, where the court quoting from State v. Darchuck, 117 Mont. 15, 156 P.2d 173, stated: . . . It is a well-settled rule in this jurisdiction that instructions must be considered as a whole, and that, if they fairly tender the case to the jury, it is not reversible error that one or more of the instructions, standing alone, is not as full or accurate as it might have been . . .

The refusal to give defendant's proposed instruction 13 was not prejudicial due to the fact that such instruction is ambiguous, and if it had been given it would have invaded the province of the jury. The intent of the instruction is covered by court's instruction 28, therefore no error was committed.

We find that the contract herein comes under the classification of a bailment; that the testimony showed appellant violated this trust by appropriating the money to his own use, and that he was properly convicted of grand larceny by bailee. Having reviewed the entire record, and examined all the specifications of error, we fail to find any prejudicial error. Therefore the judgment of the District Court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES DOYLE and CASTLES concur.

MR. JUSTICE ADAIR dissents.