THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT *v.*
LARRY WATSON, DEFENDANT AND APPELLANT.

No. 10763
Submitted November 9, 1964. Decided January 14, 1965.
Rehearing denied February 19, 1965.
398 P.2d 949.

John B. Kuhr (argued), Havre, for appellant.

Forrest H. Anderson, Helena, Arthur W. Ayers, Jr., Asst. Atty. Gen. (argued), Helena, Robert D. Morrison, Havre, for respondent.

MR. JUSTICE CONWAY HARRISON delivered the Opinion of the Court.

This is an appeal from a conviction of robbery. The case was tried by jury before the Honorable C. B. Elwell, Judge of the Twelfth Judicial District, in Havre, Montana, on October 21, 1963. The jury returned a verdict of guilty and fixed the punishment by imprisonment in the State Penitentiary for a period of five years. This appeal seeks a reversal of the judgment, and remand for a new trial.

At the trial level, the defendant was represented by counsel which he chose and retained. On appeal, defendant requested that the court appoint an attorney for him as he was without funds to pay for such services. The court appointed John B. Kuhr, Esq., who had not appeared as trial counsel.

Briefly the facts are that on August 24, 1963, defendant borrowed a 1955 Chevrolet automobile from his neighbor. He drove the automobile to Chinook, Montana, where he met Guy Smith and Gary Callaghan. In Chinook, two guns, one owned by Callaghan and one owned by Smith, were transferred from Callaghan's automobile to the automobile that the defendant had borrowed. The three men then drove to Havre in the borrowed automobile.

Upon arriving in Havre, they drove to defendant's house where they drank beer, and continued a conversation which they had started earlier about their need for money. During

this period, Guy Smith took a silk stocking belonging to the wife of the defendant and tried it on over his face. Not being the Halloween period, and the fact that the three men were over the age of trick or treat, this action of Smith was no doubt given some consideration by the jury. Later, defendant and Smith left in the borrowed automobile to obtain more beer. Callaghan remained at defendant's house.

After purchasing a six-pack of beer, defendant and Smith drove around town. They observed Dave Blumfield closing his store and carrying a box or sack, which they saw him put in his car, so they followed him and when he stopped in front of his house, Smith then put the silk stocking over his head, took a .38 snub-nosed revolver, went over to Mr. Blumfield, pointed the pistol at him, and obtained a sack containing approximately $2,800.08 in silver, paper currency and checks, and Mr. Blumfield's wallet.

The defendant and Smith then drove off rapidly and went back to defendant's house. Mr. Blumfield immediately entered his home and called the police. When the police arrived at his home he gave them the license number of the automobile and the police traced the possession of such car to the defendant.

The defendant, Smith, and Callaghan were in the basement of defendant's home separating the paper money from the checks when Callaghan saw the police through the basement window. The defendant took all the money and threw it under the couch and went upstairs. Guy Smith ran out the back door. The police apprehended the defendant and Gary Callaghan, but Smith escaped and though later apprehended in another state he has not been tried in Montana due to imprisonment in the state of apprehension.

The defendant admits the chronology of events and made a confession to the same. However, he contends that Guy Smith forced him to commit such acts under threats or menaces sufficient to show that he had reasonable cause to, and did, believe that his life would be endangered if he refused. Such

circumstances, if proved, could constitute a defense under R.C.M.1947, § 94-201, subd. 8, which is as follows:

"*Who are capable of committing crimes.* All persons are capable of committing crimes except those belonging to the following classes: * * *

"8. Persons (unless the crime be punishable with death) who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to, and did, believe their lives would be endangered if they refused."

The defendant assigns as reversible error the court's failure to instruct the jury with regard to this defense.

At the time of trial, defense counsel did not request an instruction with regard to this defense. There was no objection or exception to the instructions as a whole or to any of them as given, nor was there any objection or exception made to the trial court's failure to give a separate and specific instruction concerning the defense defined by Section 94-201, subd. 8.

Defendant testified that Guy Smith told him to follow Blumfield. He further testified:

"Q. Did you offer any objection to any of this? A. Well, I told him that we couldn't get away with it. Just a little bit— and he said, 'let me worry about that'; and, 'you just drive the car.'

"Q. All right. Go ahead. A. When I saw Dave was going to pull in to his house, well, I told him I wasn't going to stop. He just motioned with the gun, 'you stop.'

"Q. He had the gun in his hand then? A. Yes, sir.

"Q. Which one, the snub-nosed or the other one? A. Yeah, the small one.

"Q. The small one. That's enough to tell you you better stop, wasn't it? A. Yes. It looked awfully big then.

"Q. Tell the jury whether or not you were afraid of this fellow Smith? A. Well, I was definitely, yes."

On cross-examination the defendant testified as follows:

"Q. This Smith, is he a pretty hard character? A. Hard?

"Q. You testified that, I think, on direct examination you were scared of him? A. That's right.

"Q. Was he a pretty hard character then? A. What do you mean by hard?

"Q. Is he the type of individual that a person should be afraid of? A. I would say so.

"Q. How long have you known him? A. Oh, I don't know, five years, four.

"Q. You know him quite well? A. I think so.

"Q. How long have you known Callaghan? A. Fifteen years.

"Q. You have palled around with these guys quite a bit, is that it? A. A little.

"Q. What makes you so frightened of Smith all of a sudden? A. I know what type of a character he is. He is hard.

"Q. What does he do? A. What does he do?

"Q. Yeah, that causes you to believe he is hard. A. Well, if you know a person that long, you know if he is hard or not.

"Q. You felt that he would use a gun, is that it? A. That's right.

"Q. Very capable of doing it? A. (No response by witness.)

"Q. When he said he wanted to 'hit' Dave, you figured he meant it, is that right? A. When he wanted to hit Dave?

"Q. When he wanted to rob him. A. I imagine.

"Q. You are telling me that the first time you made any particular objection was after about the time Dave parked, is that it? A. No. All the time we was riding down there, I was telling him.

"Q. You didn't think it would succeed; but you didn't say you wouldn't participate. A. I said no, we'd never get away with it.

"Q. Yeah. A. When he stopped, I said, 'no, I am going to go straight.' He said, 'stop.' And I stopped."

Later on redirect examination defendant testified as follows:

"Q. * * * The County Attorney seems to be surprised that you are afraid of him. Do you know anything else about him that would cause you to be afraid of him aside from having two guns, one cannon and one short snub-nosed, loaded in your car? Now, aside from that, do you know anything about him that would cause you to be afraid of him? A. Well, I know everything about him; that is why I am afraid of him.

"Q. None of it is good? A. Not very much."

From this testimony it is obvious that the appellant was against pulling the robbery because as he said, "we couldn't get away with it," and not because he was afraid of Smith. However, taking his testimony in the light most favorable to his contentions on appeal, the instructions of the court adequately covered the case presented.

R.C.M.1947, § 94-7201, provides in part:

"*Order of trial.* The county attorney must state the case and offer evidence in support of the prosecution. * * *

"4. When the evidence is concluded, if either party desires special instructions to be given to the jury, such instructions shall be reduced to writing and numbered by the party, or his attorney, and together with a written request asking the same, and signed by the party, or his attorney, delivered to the court. * * * no cause shall be reversed by the supreme court for any error in instructions which was not specifically pointed out and excepted to at the settlement of the instructions herein specified. * * *

"5. * * * In charging the jury, the court shall give to them all matters of law which it thinks necessary for its information in rendering a verdict."

This court, in previously commenting on this statute, stated in State v. Thomas, 46 Mont. 468, 469, 128 P. 588, "Section 9271, Revised Codes [1907, now R.C.M.1947, § 94-7201], forbids this court reversing a judgment for errors in instructions unless such errors are specifically pointed out at the time the

582

instructions are settled, and the exceptions presented to this court in a bill of exceptions settled as provided by law. The statute is mandatory, and in the absence of such exceptions this court cannot consider errors predicated upon the instructions, however erroneous or prejudicial they may be. State v. Cook, 42 Mont. 329, 112 Pac. 537.'' See also State v. Dougherty, 71 Mont. 265, 229 P. 735; State v. Sawyer, 71 Mont. 269, 229 P. 734; State v. Donges, 126 Mont. 341, 251 P.2d 254; State v. Maciel, 130 Mont. 569, 305 P.2d 335.

Failure to instruct in certain particulars cannot be assigned as error, where the court has properly covered issues, since, in the absence of request for instructions, there is no ruling to review. Girson v. United States, 9 Cir., 88 F.2d 358, certiorari denied 301 U.S. 697, 57 S.Ct. 924, 81 L.Ed. 1352.

However, the court may examine the instructions for the purpose of determining whether or not the jury was properly instructed. State v. Daw, 99 Mont. 232, 43 P.2d 240.

The first instruction given to the jury was as follows:

''The State of Montana, by Information filed herein, charges the Defendant, Larry Watson, with the crime of Robbery. To this Information the Defendant has pleaded not guilty and under that plea the issue as to the Defendant's guilt is raised, which issue must be determined by you. Before you can convict the Defendant of the crime charged against him, the State must prove by evidence beyond a reasonable doubt *all of the material allegations of the Information.*

''The material allegations of the Information are:

''That on or about the 24th day of August, A.D., 1963, and before the filing of this Information, the said defendant, Larry Watson, at the County of Hill, in the State of Montana, with force and arms, did then and there knowingly, *wilfully,* unlawfully and feloniously commit the crime of Robbery, in that the said Larry Watson then and there being, then and there did, wilfully, wrongfully, unlawfully, feloniously and forcibly, take from the person, possession and immediate presence of one

Dave Blumfield the sum of Two Thousand Eight Hundred and Eight/100th Dollars ($2,800.08), belonging to the said Dave Blumfield, which said taking was then and there without the consent and against the will of the said Dave Blumfield, and was then and there accomplished as aforesaid by means of force used and against the said Dave Blumfield, and by then and there putting the said Dave Blumfield in fears, *and with felonious intent* then and there in him, the said Larry Watson, [sic] to deprive the said Dave Blumfield of his said property, and *to appropriate the same to his own use,* all of which is contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the State of Montana.'' (Emphasis supplied.)

Instruction number 7 states in part:

''* * * If the state has not proved by evidence beyond a reasonable doubt all of the material allegations of the Information, or if in your minds there exists a reasonable doubt arising from the evidence as to whether the defendant is guilty of the crime charged in the Information, he is entitled to an acquittal and your verdict should be not guilty.''

Instruction number 11 provided in part:

''* * * in order to constitute the offense charged in this case the intent alleged in the information is necessary to be proved. * * *.''

In determining the effect of given instructions, all instructions must be read and considered as a whole. State v. Espelin, 106 Mont. 231, 76 P.2d 629; State v. Darchuk, 117 Mont. 15, 156 P.2d 173; State v. Bosch, 125 Mont. 566, 242 P.2d 477; State v. Wild, 130 Mont. 476, 305 P.2d 325. Instructions must be considered as a whole and, if they fairly tender the case to the jury, the fact that one or more of the instructions, standing alone, is not as full or accurate as it might have been, is not reversible error. State v. Allison, 122 Mont. 120, 199 P.2d 279; State v. Ahl, 140 Mont. 305, 371 P.2d 7.

In the case at bar, the material allegations which were

enumerated by the court in its charge to the jury were that defendant acted "wilfully," and that he acted "with felonious intent * * * to appropriate the same [the money] to his own use," and that "the State must prove by evidence beyond a reasonable doubt all of the material allegations of the Information," and "in order to constitute the offense charged in this case the intent alleged in the Information is necessary to be proved." The import of the defense defined in section 94-201, subd. 8, supra, is that the defendant acted not willfully, but out of threats or menaces sufficient to show that he had reasonable cause to, and did, believe his life would be endangered if he refused. The jury, in finding a verdict of guilty, considered the instructions of the court, and found that all of the material allegations of the Information were proven by the evidence beyond a reasonable doubt. By so finding, they found that defendant did not act unwillfully and out of threats or menace sufficient to show that he had reasonable cause to, and did, believe his life to be endangered if he refused to act.

It was incumbent upon defendant to offer and request more specific instructions had such been desired. His failure to do so cannot furnish him grounds for reversible error.

For the foregoing reasons the judgment appealed from is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, DOYLE and ADAIR, concur.