PETITION OF LARRY WATSON.

No. 10997
Decided July 27, 1965.
404 P.2d 315

PER CURIAM:

Original proceeding.

Larry Watson, an inmate of the Montana State Prison, appearing pro se, has filed with this court a petition seeking a writ of habeas corpus alleging that:

(1) The evidence, consisting of money bags and money, of a robbery in which he admitted being the driver of the car that was used, was seized during the course of an illegal search of his home;

(2) That the police had no search warrant;

(3) The search was not an incident to a lawful arrest;

(4) That the search of the home was not an incident of a lawful arrest because he had stepped outside the house where he was frisked and taken to a police car;

(5) That no one gave police permission to search the home; and

(6) That the evidence of his oral confession and written confession was coerced and illegal because:

(a) He was only 25 years of age, had only a three year high school education, and had no previous adult experience with criminal proceedings;

(b) That the police didn't feed him from 10:00 P. M. Saturday evening, August 24, 1963, until 5:00 P. M. the next day;

(c) He was not permitted to see his wife until Monday, August 26, 1963;

(d) That he asked for a lawyer before talking and his request was denied;

(e) That even though the county attorney said he would not argue against a suspended sentence if the petitioner gave a statement, he ended up with a five year prison sentence.

(f) His statment was composed by police officers and he was coerced into signing same.

Attached to the petition as Exhibit B is an affidavit of Dolores A. Watson, the ex-wife of the petitioner setting forth in some detail her version of what happened on the evening of August 24, 1963.

The facts of this case as developed upon the trial have previously been set forth in the opinion of this court dated January 14, 1965, in State v. Watson, 144 Mont. 576, 398 P.2d 949, and little need be added to them. They clearly show that peti-

tioner and Guy Smith borrowed a neighbor's car, robbed a store owner at the point of a gun, sped back to petitioner's residence and were in the act of counting their loot in the basement, by aid of a flashlight, when the police arrived in pursuit. They had neglected to change the license plates of the neighbor's car, and the victim of the robbery had seen the license number, given it to the police, thereby aiding them in arriving at the petitioner's home within minutes of his arrival.

This court early established that in determining whether probable cause existed for arrest without a warrant, a liberal rather than strict course should be followed. State v. Hum Quock, 89 Mont. 503, 300 P. 220.

Here, where the evidence so clearly showed that the car used in the robbery was parked next to the petitioner's house, the neighbor who owned the car had told the police that petitioner was the person who had borrowed it, certainly even under the most liberal interpretations that can be given to recent United States Supreme Court opinions, there was probable cause for the arrest of the petitioner.

Concerning the search and seizure of the money by the police in petitioner's basement there was no objection at the trial to the introduction of the evidence in question nor was there any showing that the police officers were not there by permission of the owners. To the contrary is evidence given by Chief Leon Davidson that he asked Mrs. Watson for permission to search the house and that she replied: "Yes, go right ahead; I have nothing to hide." This she now seems to deny in her affidavit. Such a search most certainly was with the owner's permission. State ex rel. Muzzy v. Uotila, 71 Mont. 351, 229 P. 724.

The petitioner's maudlin plea that he was *only* 25 years of age, and *only* had three years of high school education leaves much lacking to show that he could be coerced into making an involuntary confession. His age did not prevent his siring four children. This court cannot but reflect that there are many

men of a much younger age who are today using weapons to defend this country in the far corners of the world rather than robbing a fellow townsman.

Having now entered the confining walls of the state prison he seems to have forgotten the testimony of the city police officers concerning his allegedly coerced statement. Officer Zortman testified as follows:

"Q. Who was present at the time? A. County Attorney Robert Morrison, myself, and officer Divish.

"Q. At this time, before you began your interrogation of the defendant, was he advised of his rights? A. Yes.

"Q. And just what was he advised of in that respect? A. He was advised that anything he might say may be held against him at a later date. He was advised of his right to counsel.

"Q. Was any undue influence exercised upon him; or were any promises made to him at that time? A. No sir.

"Q. Did he offer to make a free and voluntary statement concerning the events of the previous evening? A. Yes, sir."

All of this testimony went in unchallenged at the time of trial, though petitioner was represented by counsel of his own choice, one of Montana's most experienced criminal attorneys. Certainly if there had been any merit to these belated pleas of a coerced confession they would have been raised at trial by the then defense counsel—if they had merit.

The fact that he did not see his wife from 10:00 P. M. Saturday night until Monday morning is regrettable, as is the fact that the City of Havre serves but one meal on Sunday to its jail inmates. Such facts make neither the arrest nor confession illegal. State v. Nelson, 139 Mont. 180, 362 P.2d 224.

Concerning the affidavit of the ex-Mrs. Larry Watson this court cannot but note that she did not testify at the trial of her then husband and that the affidavit now appears tailor-made to his allegations.

The relief requested is therefore denied and the petition dismissed.