STATE OF MONTANA, Plaintiff and Respondent v. RALPH REINER, Defendant and Appellant.

No. 14144.
Submitted Sept. 14, 1978.
Decided Dec. 7, 1978.
587 P.2d 950.

240

A. Michael Salvagni argued, Bozeman, for defendant and appellant.

Mike Greely, Atty. Gen., Helena, Sheri K. Sprigg argued, Asst. Atty. Gen., Helena, Gregory Todd argued, Deputy County Atty., Bozeman, Donald E. White, County Atty., Bozeman, for plaintiff and respondent.

MR. JUSTICE DALY delivered the opinion of the Court.

Ralph Reiner appeals from convictions on three counts of aggravated assault rendered in the District Court of the Eighteenth Judicial District, Gallatin County, the Honorable W. W. Lessley presiding.

On the evening of November 27, 1976, George Cooper and his son Stuart visited William Brainard of Belgrade, Montana, to obtain permission for themselves and Lawrence Wilt to hunt on Brainard's land in Gallatin County the following day. Brainard wrote a note granting them his permission. Brainard's property is separated from public access by land owned by a Mr. Karr of Dallas, Texas. For the previous two years Ralph Reiner served as a caretaker of the Karr ranch which was posted against trespassing. Brainard telephoned defendant Reiner to inform him of the hunters crossing the Karr ranch onto Brainard's property the next day. Defendant acknowledges receiving the call. It is unclear from the testimony whether Brainard told the Coopers to stop in at defendant's house before proceeding through the Karr ranch. Brainard testified he did not think he gave them any such instruction. Defendant testified he understood Brainard would tell them to check in with him.

In the early morning hours of the following day, the Coopers and Wilt drove onto the Karr ranch in Wilt's pickup en route to the Brainard property. Using a key they had obtained from Brainard, they opened and closed the gates across the roadway and proceeded directly to their intended hunting area without stopping at defendant's house. The hunters denied they were directed to stop at the house, and since it was early they chose not to disturb him. Ap-

proximately 2:30 that afternoon, after a cold and unsuccesful hunt, the three unloaded their rifles and headed home. They placed two of the rifles in a rack mounted over the back window of the pickup cab and George Cooper held his rifle between his knees, with the muzzle pointing upward.

A short time after they passed defendant's house on their way out, the hunters saw defendant approaching them from behind in a Blazer at a high rate of speed. After continuing a short distance they pulled onto a wide portion of the roadway. Defendant pulled his vehicle up next to the driver's side of the pickup. He testified he had honked a great many times before the pickup pulled over. After stopping defendant immediately got out of his vehicle carrying a .357 Magnum revolver. The testimony differs as to whether defendant pointed his revolver at the hunters as he approached their vehicle, as all three hunters assert, or whether he put the weapon in his belt, as defendant claims. When he reached the driver's door defendant, in his words, "began firing questions" at the hunters in an excited and abusive manner. Stuart Cooper testified he tried to tell defendant that they were there with permission but that defendant refused to listen.

At some point in this verbal confrontation defendant became concerned about the rifle which George Cooper held between his legs. He testified he saw Cooper's hand go down toward the trigger and the muzzle of the rifle tip toward him. At that point, he testified, "there was no way to hold me back". Defendant's version is that he pulled his revolver from his belt, and fired a shot into the ground, and ordered the hunters to get out of the pickup. As Stuart Cooper exited past the right side of the seat, where his father had been seated, defendant became concerned about the rifle once again. He fired a second shot into the ground and told Stuart Cooper to keep his hands off the rifle.

The testimony differs as to when the shots were fired. According to Stuart Cooper, defendant had ordered the hunters out of the pickup when he first approached their vehicle and told them to march toward a cut off bank beside the road firing twice "to make

us move a little faster". Lawrence Wilt testified that as defendant came around the front of his Blazer he pulled the revolver from under his coat, pointed it into the cab and told the hunters to get out, that he was going to kill them. After defendant ordered them out of the pickup, he fired twice returning the revolver to a pointing position after each shot, first toward Wilt, then toward George Cooper. George Cooper testified defendant had ordered the hunters out of the cab of the pickup and that he had already gotten out of the cab at the time defendant fired the first shot. He said defendant then ordered the three ment to march toward a side hill and that as they marched, defendant fired a second shot.

All three hunters testified that defendant repeatedly threatened to kill them using abusive language. Defendant concedes he threatened to blow their heads off "at least once or twice."

After the hunters got out of the cab Stuart Cooper asked defendant if he was "Ralph". Defendant calmed down, and Cooper was able to tell him that the three had obtained written permission. George Cooper produced the note which Brainard had given him the night before and gave it to defendant to read. Defendant apologized, and the hunters were soon on their way.

Defendant was subsequently convicted of three counts of aggravated assault under section 94-5-202(1)(c), R.C.M.1947, which provides:

"A person commits the offense of aggravated assault if he purposely or knowingly causes reasonable apprehension of serious bodily injury in another by use of a weapon."

On appeal defendant raises five issues:

1. It is error to give an instruction on self-defense which is not the same as the instruction settled upon in chambers and which does not state that the burden of proof does not shift to the defendant when he raises the issue of self-defense?

2. Is it error to give an instruction on the use of force in self-defense by an aggressor in statutory language without relating the instruction to the facts of the case?

3. Is it error to refuse to instruct the jury on the principle that a person may act in self-defense in response to *appearance of* imminent danger, even if the person's belief that he is in danger is mistaken?

4. Is it error to refuse to instruct the jury on the lesser included offense of assault when the defendant is charged with aggravated assault?

5. Is a criminal verdict supported by substantial evidence when the defendant raises evidence tending to show justification by reason of self-defense?

Issue 1. In settling instructions the trial judge ruled that he would read the following instruction on self-defense:

"You are instructed that the defendant in this cause has raised the defense of justifiable use of force or self-defense as an affirmative defense to show that he is not guilty of the crimes ·charged against him by the State of Montana. The defendant must prove his self-defense in order to raise a reasonable doubt as to his "guilt."

Defendant objected, contending the instruction would confuse the jury as to the continuing burden of proof on the State. When the instructions were later read to the jury, this instruction, Instruction No. 12, took a different form:

"You are instructed a defense of justifiable use of force is an affirmative defense."

Both defendant and the State agree that the test to be applied when error is predicated on a jury instruction is whether, when the instruction is considered as a part of the whole body of instructions, the instruction is prejudicial to the appealing party. *State v. Caryl* (1975), 168 Mont. 414, 430, 543 P.2d 389, 398, states the applicable rule:

"In determining the effect of given instructions, all instructions must be considered as a whole and if they fairly tender the case to the jury, the fact that one or more instructions, standing alone, is not as full or as accurate as it might have been is not reversible error."

See also *State v. Brooks* (1967), 150 Mont. 399, 410, 436 P.2d 91, 96-97; *State v. Watson* (1965), 144 Mont. 576, 583, 398 P.2d 949, 953.

■ The above instruction, which defendant claims is prejudicial because it appears to shift the burden of proof to defendant, states only that the defense of justifiable use of force is an affirmative defense. Defendant further asserts that the other 16 instructions fail to make up the deficiency. *State v. Grady* (1975), 166 Mont. 168, 175, 531 P.2d 681, 684, states the principle that the defendant has the burden only of producing sufficient evidence of self-defense to raise a reasonable doubt of his guilt. In this case, however, it appears that the instructions, when considered as a whole, show that the burden of proving the defendant's guilt with the State. First, Instruction No. 2 contains the following sentence:

"The burden of proof rests upon the State *throughout the trial* to establish the guilt of the accused beyond a reasonable doubt and a conviction is not warranted unless this burden is sustained." (Emphasis added.)

Second, Instruction No. 4 informs the jury that defendant is presumed to be innocent and that the presumption "remains with him throughout every stage of the trial and during [the jury's] deliberations on the verdict . . ."

Third, Instruction No. 5 directs the jury that to convict defendant, each element of the crime "must be proved by the state by competent evidence, beyond a reasonable doubt" and that if the jury, at the close of the evidence, still entertained "any reasonable doubt upon any fact or element" which must be proved by the State, its duty was to "give the defendant the benefit of such doubt and acquit."

Thus, the jury was repeatedly instructed that the burden of proof did not shift at any point to defendant. It is difficult to see how an additional instruction, which repeated that defendant need only raise a reasonable doubt to the State's case, could have made this point any more clear.

The court's failure to further explain in Instruction No. 12 de-

fendant's burden for raising a reasonable doubt is not prejudicial, and it is not necessary to consider defendant's claim that the court's failure to read the instruction as settled upon in chambers constitutes reversible error. See *State v. Jones* (1973), 161 Mont. 117, 124, 505 P.2d 97, 101.

Issue 2. Defendant's second issue is directed at Instruction No. 10 which reads:

"You are instructed that the justification of self-defense or defense of property is not available to a person who purposely or knowingly provokes the use of force against himself unless such force is so great that he reasonably believes that he is in imminent danger of death or serious bodily harm and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or serious bodily harm to the assailant."

Defendant contends this instruction constitutes reversible error because it is an abstract statement of law and does not fit the facts of the case. The instruction itself is merely a restatement of section 94-3-105(2)(a), R.C.M.1947. Defendant argues an abstract statement of law is tolerable in a jury instruction "only when the facts of the case are few and simple, and the general principle of the law may be easily applied," citing *Jeffries Coal Co. v. Industrial Accident Board* (1957), 131 Mont. 511, 519, 312 P.2d 128, 133.

Defendant contends he did not provoke the use of force against himself and that he pursued and confronted the hunters pursuant to his duty and authority to arrest trespassers on the Karr ranch. He maintained he fired shots into the ground only when the hunters' activities in touching a rifle in the cab of their pickup gave him cause to be concerned for his personal safety.

While courts have cautioned against the use of wholly abstract statements as instructions, an abstraction in itself is not objectionable. If the jury can readily relate the concept of the instruction to the facts and there is no prejudicial effect created by the instruction, the use of such an instruction is not reversible error. *Jeffries Coal Co. v. Industrial Accident Board*, supra, 131 Mont. at

519, 312 P.2d at 133. *Jeffries* dealt with an instruction which explained the underlying philosophy of workmen's compensation laws—namely, that the economic loss occasioned by industrial accidents should rest primarily upon industry rather than the public. Even that instruction, though not related to any issues presented by the evidence, was approved because it was "not such that the jury would be misled to the prejudice of the appellant." 131 Mont. at 519, 312 P.2d at 133.

Under defendant's version of the facts, in which he did not draw his revolver until threatened by the movements of George Cooper, he argues the only way he could be considered an aggressor would be if he threatened the hunters prior to the time the vehicles stopped. This, he says, is unreasonable because he had legal authority to stop and arrest those whom he suspected to be trespassers.

The testimony, however, contains substantial evidence upon which the jury could reach the conclusion that defendant had provoked the "threatening movements", if indeed there were any. All three hunters testified defendant had drawn his revolver and pointed it toward them as he approached their vehicle. They further testified he repeatedly threatened to kill them. Under these circumstances it was proper for the jury to consider whether defendant had provoked the use or threat of force against himself within the meaning of section 94-3-105(2)(a), and therefore, whether the more limited right of self-defense which that action describes applied to him.

Decisions under the Illinois Criminal Law and Procedure Code of 1961, section 7—4-, from which section 94-3-105(2)(a) is derived, support this conclusion. *People v. Day* (1972), 2 Ill.App.3d 811, 277 N.E.2d 745, 747, and *People v. McBride* (1970), 130 Ill.App.2d 201, 204, 264 N.E.2d 446, 451, dealt with the propriety of instructing the jury as to the use of force by a person who initially provokes the use of force against himself. In each instance the evidence conflicted or was unclear as to whether the defendant or his victim was the initial aggressor. Under those circumstances the

Illinois court held that the jury was properly instructed as to an aggressor's limited right of self-defense.

Because the evidence in this case conflicts as to whether defendant initially provoked the threat of force against himself and substantial evidence exists to support a jury finding that he did initially provoke the threat of force against himself and substantial evidence that he did initially provoke the hunters, it was proper to instruct the jury that his right of self-defense was limited in accordance with section 94-3-105(2)(a).

Issue 3. Defendants asserts that the court erred in refusing his offered Instruction Nos. 1 and 3. They distinguished between actual and apparent danger to the defendant and instructed that only apparent danger, as viewed by a reasonable person, need be shown to justify the use of force in self-defense. He contends further that Instruction No. 14, which was given, does not adequately cover the point his proposed instructions made. Instruction No. 14 reads:

"You are instructed a person is justified in the use of force or threat to use force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force likely to cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily harm to himself or another, or to prevent the commission of a forcible felony."

Montana law, both before and after enactment of the 1973 Criminal Code, has required the jury to consider a claim of self-defense by a defendant in terms of the apparent danger which he perceived, as a reasonable person, rather than in terms of the danger actually confronting him. Defendant's claim here is that the mere recitation of section 94-3-103, R.C.M.1947, in the form of Instruction No. 14, fails to properly present this concept to the jury. The statutory wording, as contained in the instruction, does direct the jury to consider whether the defendant "reasonably believes" that force or the threat to use force is necessary. It does not say whether

that reasonable belief must be found upon subjective appearances of danger or objective facts.

*State v. Daw* (1935), 99 Mont. 232, 239, 43 P.2d 240, 243, states the rule that appearance rather than actuality of imminent danger must govern the jury's consideration of the defendant's self-defense claim:

". . . a person assailed may act upon appearances as they present themselves to him, meet force with force, and even slay his assailant; and though in fact he was not in any actual peril, yet if the circumstances were such that a reasonable man would be justified in acting as he did, the slayer [or person assaulting another under such circumstances] will be held blameless. (Citations omitted.)" (Bracketed material in original.)

The Criminal Law Study Commission's comment to section 94-3-102 indicates that the section is a codification of prior Montana law:

"This section codifies prior Montana law in which the section is intended to test the right of self-defense as measured by what a reasonable person would have done under like or the same circumstances [Citing *State v. Houk* (1906), 34 Mont. 418, 423, 87 P. 175, 176.] A person attacked can act upon appearances and might justifiably kill his attacker, though not in actual peril if the circumstances are such that a reasonable man would be justified in acting the same way."

In *State v. Jones*, 161 Mont. at 125-26, 505 P.2d at 101-02, the appellant alleged error because the District Court had failed to give an instruction on self-defense dealing with appearances of imminent danger. This Court's ruling, which upheld the District Court, did not repudiate the doctrine. In its view of the facts, which involved a parking lot scuffle between the defendant and a police officer who attempted to arrest him, this Court concluded that the "appearance" and "actualities" were the same: ". . . there is simply no evidence from which the jury could infer that the defendant in exercising his right of self-defense acted on appearances as a reasonable man rather than in light of the actual situation that

presented itself." 161 Mont. at 126, 505 P.2d at 102. In other words, the defendant was well aware that the officer was merely trying to place him under arrest, a far different situation from that which defendant in the present case testified to—that is, the ambiguous and apparently threatening motions of a hunter with a high-powered rifle.

Section 94-3-102 is identical to, and was derived from section 7-1 of the Illinois Criminal Law and Procedure Code of 1961. Decisions by Illinois courts construing section 7-1 both before and after Montana's enactment of 94-3-102 make clear that the trier of fact is to consider the *appearance* of imminent danger to a defendant claiming self-defense, not the actuality of such peril. "If a defender has reasonable ground to believe himself in danger of suffering bodily harm he may protect himself even if he is mistaken and the danger is only apparent." *People v. Brumbeloe* (1968), 97 Ill.App. 2d 370, 240 N.E.2d 150, 154. "Again we stress the principle that belief is reasonable even if the defendant is mistaken." *People v. Williams* (1965), 56 Ill.App.2d 159, 205 N.E.2d 749, 753. See also People v. Limas (1977, 45 Ill.App.3d 643, 4 Ill.Dec. 242, 359 N.E.2d 1194, 1200-01; *People v. Brown* (1974), 19 Ill.App.3d 757, 312 N.E.2d 789, 793-94.

That a defendant's claim of self-defense must be judged in the light of appearances rather than actualities is a generally cited principle of the law of self-defense. Defendant must demonstrate that his belief in the necessity for using force is reasonable, but even a mistaken belief may be reasonable. "That there was in fact no such necessity, or that some other person might have thought there was none, is quite immaterial." J. Miller, *Criminal Law* § 67(c), at 203. An actor's appraisal of apparent imminent peril may lead him to an incorrect conclusion despite his honest and reasonable beliefs. Under such circumstances he is not to be deprived of his defense of self-defense. As Mr. Justice Holmes reasoned "[d]etached reflection cannot be demanded in the presence of an uplifted knife." *Brown v. United States* (1921), 256 U.S. 335, 343, 41 S.Ct. 501, 502, 65

L.Ed. 961, 963. See also W. LaFave and A. Scott, *Criminal Law* §
53, at 393.

■ In this instance the Court's instruction to the jury was
drawn directly from the self-defense statute applicable. That
statute states the jury must base its determination of the self-defense
claim upon the *defendant's reasonable belief* of the need to use
force to protect himself. While this instruction does not make the
concept of apparent danger absolutely clear, neither does it
misstate the law of self-defense. Under these circumstances the bet-
ter practice may be to clearly instruct that the defendant's claim
must be judged in terms of the apparent danger which he perceiv-
ed, and not the actual danger which faced him. Yet the instruction
given in this case cannot be considered so misleading as to require
a new trial. We must assume that the jury did consider defendant's
*belief* in the need to use force and whether that belief was reason-
able. This is all the statute requires.

Issue 4. In his fourth assignment of error defendant argues the
jury should have been instructed on the lesser included offense of
assault. The court refused his offered instructions on the meaning
of assault as distinguished from aggravated assault, and provided
the jury with verdict forms which permitted a finding of either ag-
gravated assault or not guilty.

Defendant argues that although a firearm was involved that fact
does not bar the jury from considering assault. Section 94-5-201(d),
R.C.M., on assault, specifically refers to the instance of knowingly
pointing a firearm at or in the direction of a person as an example
in which the purpose to cause apprehension of bodily injury is
presumed. Thus, defendant argues that by implication, assault does
not necessarily become aggravated assault simply because a
firearm is used to place the victim in apprehension of some kind of
injury. In any case, he contends the determination of whether a
threatened injury is "serious", within that word's definition in the
criminal code, is one for the jury to make. *State v. Fuger* (1976),
170 Mont. 442, 445, 554 P.2d 1338, 1340.

■ Whenever the record contains any evidence upon which

the jury might rationally conclude a defendant is guilty of a lesser offense included in the offense charged, the trial court must instruct the jury as to that lesser included offense. *State v. Radi* (1978), 176 Mont. 451, 578 P.2d 1169, 1177; *State v. Bouslaugh* (1978), 176 Mont. 78, 576 P.2d 261, 263. In some instances, the evidence precludes instructions on lesser included offenses because it is clear that the defendant is either guilty of the offense charged or entitled to an acquittal. *State v. Baugh* (1977), 174 Mont. 456, 571 P.2d 779, 781, *State v. McDonald* (1915), 51 Mont. 1, 16, 149 P.279, 285. This latter rule has been applied to cases in which the defendant relies upon an alibi defense, *State v. Radi*, 176 Mont. 451, 578 P.2d at 1177, and cases in which the defendant relies upon a defense of mitigation, but presents no evidence on that point. *State v. Baugh*, 174 Mont. 456, 571 P.2d at 781; *State v. Buckley* (1976), 171 Mont. 238, 557 P.2d 283, 285.

Give the evidence before the jury in the present case, the issue is whether the jury could have rationally concluded that defendant was guilty of assault rather than aggravated assault. Defendant was charged and tried under section 94-5-202(1)(c), R.C.M.1947. Under that section a person commits aggravated assault when he knowingly or purposely causes "reasonable apprehension of serious bodily injury in another by use of a weapon". The assault section on which defendant offered instructions to the court reads:

"A person commits the offense of assault if he knowingly or purposely causes reasonable apprehension of bodily injury." Section 94-5-202(1)(d). Thus, two elements distinguish 94-5-202(1)(c) from 94-5-201(1)(d). The section on aggravated assault requires the State to prove apprehension of *serious* bodily injury, and in all cases, the apprehension of such injury must be caused by use of a weapon.

As to the first distinguishing element defendant points out that the question of whether a bodily injury is "serious" within the meaning of the criminal code definition is one of fact to be considered and determined by the jury. *State v. Fuger*, 170 Mont. at 445, 554 P.2d at 1340. Here only the *apprehension* of injury is involved,

and the question is whether a jury could rationally conclude that the victims *apprehended* one form of injury or another. There appears, however, no reason to allow this distinction to create an exception to the general rule announced in *Fuger*. Whether an actor causes his victim to reasonably apprehend bodily or serious bodily injury is a factual question inherent in all aggravated assault prosecutions under section 94-5-202(1)(c).

As to the second distinguishing element defendant points to the statutory design of sections 94-5-201(1)(d) and 94-5-202(1)(c) to show that the use of a firearm does not necessarily turn conduct which would be assault into aggravated assault, as a matter of law. Section 94-5-201(1)(d), describing assault, contains a second sentence which reads:

"The purpose to cause reasonable apprehension or the knowledge that reasonable apprehension would be caused shall be presumed in any case in which a person knowingly points a *firearm* at or in the direction of another whether or not the offender believes the firearm to be loaded." (Emphasis added.)

The legislature's inclusion of firearms in the assault section makes it apparent that the mere use of a weapon, including a firearm, does not rule out the possibility that an assault under section 94-5-201(d) may be committed by pointing a firearm, as defendant did in this case.

While the wording of this section leaves room for interesting theoretical possibilities, defendant's claim that it entitled him to an instruction on the lesser offense of assault must be rejected here. There *may* be cases in which pointing a firearm or threatening another with a firearm could constitute assault rather than aggravated assault but we are not called upon here to say what those circumstances might be. In this case it is clear that defendant put his victims in reasonable apprehension of serious bodily injury by his menacing use of a .357 Magnum revolver. There is no evidence that the hunters feared some kind of assault other than what might be inflicted by that weapon. Under these circumstances the District Court did not err by refusing to instruct on the lesser offense.

Issue 5. Defendant's final argument is that the evidence is insufficient to support a finding of guilty. He contends the evidence raises a reasonable doubt as to whether he was himself the aggressor or that he was acting in self-defense. On that basis he contends the State has not carried its burden of proof.

The State answers by summarizing defendant's contention: "The defendant contends the jury was obligated to find he was justified in the use of force, and acquit him, simply because he presented evidence to support that theory." The jury, it argues, was entitled to review defendant's self-defense claim and could believe it or not believe it. The State further contends that, even if the jury accepted that defendant believed the use of force was necessary, it could have chosen to regard defendant's belief unreasonable.

Where the evidence on a self-defense claim is conflicting it is the jury's function to weigh the testimony and decide whether a person acted with the belief that the use of force was necessary and whether his belief was reasonable. *State v. Fuger*, 170 Mont. at 446, 554 P.2d at 1341. When presented with these factual issues the jury has the prerogative to accept or reject defendant's claims. "The jury may decide which witness it chooses to believe, after considering all of the evidence. (Citations omitted.) If substantial evidence is found to support the verdict, it will not be disturbed on appeal." *State v. Lewis* (1976), 169 Mont. 290, 294, 546 P.2d 518, 520. Here, the jury had ample opportunity to hear defendant's self-defense claim and to consider its validity. The mere fact that defendant testified to a self-defense claim does not entitle him to an acquittal. The jury may disbelieve his claim.

The judgment of the District Court is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON, SHEA and SHEEHY concur.