No. 12921

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

THE STATE OF MONTANA,

                Plaintiff and Respondent,

-vs-

ROGER G. CARYL,

                Defendant and Appellant.

---

Appeal from:  District Court of the Third Judicial District,
             Honorable Nat Allen, Judge presiding.

Counsel of Record:

    For Appellant:

        Maurice A. Maffei argued, Butte, Montana
        John Radonich argued, Anaconda, Montana

    For Respondent:

        Hon. Robert L. Woodahl, Attorney General, Helena,
         Montana
        Jock Anderson, Assistant Attorney General, argued,
         Helena, Montana
        M. K. Daniels appeared, Deer Lodge, Montana

---

                    Submitted:  November 6, 1975

                    Decided:  DEC 12 1975

Filed:  DEC 12 1975

_Thomas J. Kearney_
                Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant was convicted by jury verdict of two first degree murders and a first degree assault in the district court, Powell County. Judge Nat Allen sentenced him to two consecutive terms of life imprisonment for the murders and an additional term of ten years for the assault. Defendant appeals from the judgment of conviction and denial of his motion for a new trial.

Defendant is Roger G. Caryl, an 18 year old at the time of the crimes charged and at the time of trial. He was employed as a ranch hand at the Whitetail ranch near Ovando, Montana. On the morning of October 7, 1973 he entered the kitchen at the main lodge of the ranch with a shotgun in his hands, a pistol in a holster at his side, and a knife in his belt. As he entered Dianna Schnaible, a ranch employee, was going downstairs to get some coffee; defendant told her to get back in the kitchen and she did so. Seated around the kitchen table were John Miller, defendant's employer, and Arlene Needles, a ranch employee. Miller's wife, Roberta, was either seated at the kitchen table or standing by the dishwasher. Ruby Judd, the ranch cook, was standing by the stove and Dianna Schnaible had walked over behind her.

Defendant said "Here's hello from _____", it being uncertain who was named. The sequence of events thereafter is confused. In any event, defendant shot John Miller and Ruby Judd with the shotgun, the latter during her attempt to take the shotgun away from defendant. According to Dianna Schnaible, defendant also shot at her but missed.

John Miller, Roberta Miller and Arlene Needles ran outside the main lodge building to the Copenhaver house. John Miller died there within a short time from the gunshot wound. Ruby Judd was taken by ambulance to a hospital in Missoula where she died that afternoon.

Immediately after the shooting Steve Foundation, brother of Roberta Miller, and Jerry Schnaible, husband of Dianna Schnaible and an employee at the Whitetail ranch, went to the kitchen of the main lodge where Ruby Judd was lying on the floor. Both testified that Ruby Judd stated that defendant shot her.

Defendant left the Whitetail ranch in Ruby Judd's car and escaped the dragnet set up to apprehend him. He traveled to Denver, Colorado and then to Miami, Florida where he was apprehended in February, 1974 and returned to Montana.

On March 7, 1974 an Information was filed in the district court, Powell County, charging defendant with three crimes: (1) first degree murder of John Miller, (2) first degree murder of Ruby Judd, (3) first degree assault of Dianna Schnaible. Defendant was not charged in connection with the deaths of Steve Akins and Sam Akins, ranch employees, whose bodies were found in the bunkhouse on the Whitetail ranch occupied by them and defendant.

Defendant entered a plea of "not guilty" to each charge. He gave notice of his intention to rely on the defense of mental disease or defect excluding responsibility.

His defense at the trial principally focused on his claim that he was not responsible for his acts because of mental disease or defect. He testified in substance that the night preceding the killings and assault he drank some whiskey and took a "red" (i.e. a nonprescription drug), got "bombed", and could remember nothing more until a couple of days thereafter when he stopped at a motel in southern Montana. He did not deny the killings but claimed a state of mind incapable of forming the specific intent required to constitute the crimes. He also contended that the fact of the assault on Dianna Schnaible and the requisite specific intent was not proven.

The major battleground at the trial concerned his claim

of mental disease or defect.  The testimony at the trial consisted of events, attitudes and relationships during his childhood and during his employment at the Whitetail ranch coupled with expert opinion evidence from psychologists, a social worker, and a psychiatrist concerning the presence or absence of mental disease or defect.

The evidence indicated, among other things, that defendant was born on September 3, 1955 in Japan where his father was stationed in the Air Force.  His mother was a registered nurse. Testimony indicated that defendant grew up in Mount Zion and Decatur, Illinois and that he was a high school graduate with average grades.  From time to time he became a disciplinary problem at school resulting in temporary suspensions.  As he went through high school, he spent progressively less time at home and became more isolated from his parents.

From an early age he became obsessed with the "old west", cowboys, and gunfighters.  He wore western clothes, cowboy boots, and talked with a drawl.  He became fascinated with early Texas history, southerners, and the Confederacy.  The night he graduated from high school, he headed for Texas where he spent a few days.  He returned home and in August, 1973 headed west with a high school friend, eventually ending up at the Whitetail ranch.

He told them his name was Texana Jess McCord, apparently from a television program; that he was from Texas where his folks had a ranch; that he was an experienced cowboy; that he had been wounded in Vietnam while serving with the U. S. Marines; and many other fantasies of the same general tenor.  He was considered a braggart and a liar by many of those at the Whitetail ranch.

Testimony further indicated that he had never been paid for his work at the ranch; that he was behind in his car payments; that he had damaged his employer's truck when he ran it off the

road; that he had been given three traffic citations which were unpaid and further action was threatened; that he had shot his employer's dog; and that his employer was going to discharge him and have him removed from the premises. He began worrying on the Saturday night before the Sunday morning shootings, went to the bunkhouse, and began to drink. The two Akins and a "long haired" friend appeared at the bunkhouse; the "long hair" gave him a "red" which he swallowed; defendant went outside "bombed" and does not remember anything further until a couple of days after the shootings.

After charges were filed against defendant, he was extensively examined and tested over a four week period at the Warm Springs State Hospital. He was also examined and tested by a psychologist retained by the defense.

The principal report and testimony on behalf of the state was given by Dr. M. F. Gracia, a psychiatrist at the Warm Springs State Hospital. His diagnosis of defendant was: without mental disorder; episodic excessive drinking; passive-aggressive personality; drug dependence, psycho-stimulants (reds); social maladjustment; unsocialized aggressive reaction of adolescence. Dr. Gracia concluded: (1) that defendant had the capacity to understand the proceedings against him and to assist in his own defense; (2) that at the time of the criminal conduct charged, defendant had the ability to appreciate the criminality of his conduct and to conform his conduct to the requirements of law; and (3) that defendant possessed the capacity to have the particular state of mind which is an element of the offenses charged.

The defense called Dr. Lester W. Edens, a psychologist, who gave a report and testimony on defendant's mental state. On the basis of his testing and examination, Dr. Eden's conclusion and opinion can be stated in this language from his report:

- 5 -

"In summation, it is the impression of this
examiner that this patient is characterized as
a personality disorder of a non-psycotic nature.
Specifically, the diagnosis would read personality
disorder, anti-social personality type, Code No.
301.7 of the A.P.A. diagnostic and statistical
manual of disorders. In addition to the primary
diagnosis, it is the impression of the writer
that there are underlying schizophrenic symtoms
not yet characterized, that is, Mr. Caryl on
occasion appears to present contaminated thought
processes and inappropriate mannerisms and re-
sponses. The dynamics related to a personality
disorder, together with the milieu, undoubtedly
contributed to the reported incident for which
this patient is incarcerated. Additionally, with
a tendency towards periodic disorganization of
thought processes, his condition has been and will
continue to be disabling, particularly when com-
pounded with the induction of alcohol and/or
non-prescriptive drug abuse."

Defendant's specifications of error can be grouped to
permit ease of analysis and discussion:

(1)   Insufficient evidence to support the conviction.

(2)   Error in denying defendant a pretrial interview of
state's witness Dianna Schnaible.

(3)   Error in jury instructions.

(4)   Error in admitting statement of Ruby Judd.

(5)   Prejudicial conduct of the prosecuting attorney.

Defendant contends the evidence was insufficient to
support his conviction on either murder charge or the assault
charge. He contends that proof of one or more elements of each
crime was lacking.

Defendant claims the evidence insufficient to prove pre-
meditation or malice aforethought in the killing of John Miller,
and therefore the most he can be convicted of is second degree
murder.

Premeditation and malice aforethought are subjective
mental states which can only be proven by the circumstances under
which the killing took place.

"Whether premeditation is present in a given case
is a question of fact to be determined by the jury

- 6 -

> from all the circumstances of the case such as
> the use of a deadly weapon upon an unarmed vic-
> tim, * * * [and] the procuring and preparation
> of weapons with which to commit the crime * * *."
> 1 Wharton's Criminal Law and Procedure, § 267,
> pp. 566, 567, 568.

Here premeditation and malice aforethought can be inferred from defendant's act of arming himself with deadly weapons, seeking out his victim, and shooting his unarmed victim without provocation.

Next, defendant claims that the evidence is insufficient to prove premeditation and malice in the killing of Ruby Judd. It is apparently defendant's contention that the fact she was shot while trying to take the shotgun away from him negates these elements.

The circumstances surrounding the killings and assault support an inference that defendant intended to shoot as many people as he could indiscriminately. What has been said heretofore in connection with the killing of John Miller applies as well to the killing of Ruby Judd. The fact she attempted to defend herself and the other persons present in the kitchen by grabbing the shotgun does not necessarily negate the malice and premeditation in defendant's mind. The jury found malice and premeditation and on review this Court will consider the evidence in the light most favorable to the prosecution who prevailed in the trial court (Schneider v. United States, 192 F.2d 498; Hellman v. United States, 298 F.2d 810), and will assume the existence of every fact which the jury could have deduced from all the evidence to reach its verdict. State v. Noble, 142 Mont. 284, 384 P.2d 504.

Defendant also claims there is insufficient evidence to prove that he shot at Dianna Schnaible or to prove a specific intent to kill her.

The crime of first degree assault is defined by statute

in section 94-601, R.C.M. 1974:

> "Every person who, with intent to kill a human
> being * * *
>
> "1. Assaults another with a loaded firearm, or
> any other deadly weapon, or by any other means or
> force likely to produce death * * *,
>
> "2. * * *
>
> "is guilty of assault in the first degree * * *".

Dianna Schnaible's testimony that defendant shot at her with a shotgun is sufficient proof of an assault with a loaded firearm within the meaning of the statute. The specific intent to kill can be inferred from defendant's act of entering the room heavily armed, the shooting of John Miller and Ruby Judd without provocation, and his succeeding act of shooting at her at close range and without provocation.

Accordingly, we hold the evidence sufficient to support defendant's conviction on all three charges.

Defendant claims prejudicial error because defense counsel was unable to interview Dianna Schnaible, the only eyewitness to the shooting of Ruby Judd and the assault on Dianna Schnaible, prior to trial.

The background of this contention is that the district court authorized expenses to defense counsel to travel to California for a pretrial interview of Dianna Schnaible and other state's witnesses. When defense counsel arrived in California on May 29, Dianna Schnaible's doctor would not permit the interview because she was in an advanced state of pregnancy with the birth of the child imminent. The state moved for continuance of the date set for trial because of her unavailability to testify until after her child was born. The district court granted a continuance of the trial date to July 15 at which time the trial commenced. Apparently Dianna Schnaible did not arrive in Deer Lodge, the place of trial, until about 9:00 p.m. on July 16.

Defense counsel apparently attempted to contact her then, but her husband would not permit them to interview her because she was highly nervous and under a doctor's care.

Defense counsel moved to dismiss the first degree assault charge on this basis. Eventually defense counsel secured a half hour interview with her during the noon hour of July 17 which defense counsel claimed was "wholly unsatisfactory". Dianna Schnaible testified thereafter at the trial as the last witness in the state's case-in-chief. The defense did not cross-examine her, but requested that she not be excused from the subpoena "in the event we wish to call her for the Defendant's case". She was never called as a witness for defendant.

Defendant's claim of prejudicial error must fail. We are aware of no obligation on the part of Dianna Schnaible to allow defense counsel to interview her prior to trial short of the statute concerning pretrial depositions of material witnesses in criminal cases, section 95-1802, R.C.M. 1947. No attempt to take her deposition was made. Defense counsel had a copy of the statement she gave following the killings and assault, together with the representation of the county attorney to the court that he was aware of no changes. There is no showing that the state interfered with defense counsel's attempts to secure a pretrial interview. Defense counsel actually secured an interview with the witness prior to her testimony at the trial, albeit "wholly unsatisfactory" from their point of view. The defense did not cross-examine her at the trial, nor did they call her as a witness in their case. There is no showing of prejudice to the defense.

Defendant's next specifications of error concern jury instructions. He claims error in the refusal of the court to give his proposed instructions 20, 21 and 23A, and contends that

Court's Instructions 20, 24, 26, and 11 should not have been given.

Defendant's proposed instruction No. 20 reads:

"You are instructed that, to entitle a defendant to acquittal on the grounds of mental disease or defect, he is not required to overcome the presumption of sanity by a preponderance of the evidence, or any greater amount of evidence than enough to raise a reasonable doubt whether at the time of the killing and assault he was unable either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

This instruction is an incorrect statement of the law. The defense of insanity must be proved by a preponderance of the evidence. Sections 94-119, 95-503, R.C.M. 1947. The proposed instruction was properly refused.

Defendant's proposed instruction No. 21 reads:

"In considering the question of whether the defendant as a result of mental defect or disease was unable either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law, you should take into consideration the evidence relating to his occupations and the manner in which he discharged the same, his personal characteristics, his peculiarities, his habits, his declarations and statements, his actions, conduct and appearance, prior to, at the time of, and after the act charged in the information, his physical condition, and any changes in his physical as well as his mental state, his temper, jealousy, shattered hopes, desires, and troubles of all kinds, together with the opinions of experts."

The refusal of this instruction was proper. The jury was well instructed on the laws applicable to a mental disease or defect excluding responsibility by Court's Instructions No. 26 through 31. Where the jury is adequately instructed on an issue by other instructions given by the court, refusal to give an instruction on the same subject proposed by a party is not prejudicial error. State v. Espelin, 106 Mont. 231, 76 P.2d 629; State v. Bosch, 125 Mont. 566, 242 P.2d 477. Additionally, some of the considerations set forth in the proposed instruction

- 10 -

are either beyond the evidence in the case or unrelated to determining a mental disease or defect, for example defendant's physical condition or his desires. The scope and extent of the instructions in a given case are necessarily governed by the particular evidence in the case. State ex rel. Krutzfeldt v. Dist. Ct. 163 Mont. 164, 515 P.2d 1312.

Defendant's proposed instruction No. 23A reads:

"You are instructed that, when a defendant is acquitted on the ground of mental disease or defect excluding responsibility, the court shall order him to be committed to the custody of the superintendent of the Montana state hospital to be placed in an appropriate institution for custody, care and treatment."

Refusal of this instruction is not error. We ruled on this issue contrary to defendant's position as recently as January 8, 1975. State v. French, ____Mont.____, 531 P.2d 373, 32 St.Rep. 27. We find no basis to change that ruling here.

Defendant contends that court's Instructions No. 20 and No. 24 are prejudicial and reversible error. Instruction No. 20 reads:

"Voluntary intoxication is no excuse for crime as long as the offender is capable of conceiving an intelligent design; he will be presumed, if the case is otherwise made out beyond a reasonable doubt, to have intended the natural and probable consequences of his own act."

The objection at the time of settlement of instructions was:

"MR. RADONICH: We object to Plaintiff's Proposed Instruction Number 36 on the ground that the Instruction is unintelligible. That it would be confusing to the Jury. That it appears to make intoxication necessarily to be proven beyond a reasonable doubt and, although intoxication, we agree, is not an excuse, intoxication is an element for the Jury to determine and consider in determining whether or not the Defendant could form an intent to commit a crime."

Court's Instruction No. 24 reads:

"There are certain presumptions of law regarding a person's intent by which you should be governed. These are that a malicious and guilty intent is

presumed from the deliberate commission of an unlawful act, for the purpose of injuring another. There are other presumptions of law bearing on the question of intent, which the law provides are satisfactory if uncontradicted, but they may be contradicted by other evidence. They are denominated, disputable presumptions, and are as follows:

"1. That an unlawful act was done with an unlawful intent;

"2. That a person intends the ordinary consequences of his voluntary act."

Defendant did not object to this instruction at the time of settlement. The gist of the objection defendant raises on appeal is that these two instructions permit the jury to presume a specific intent.

In a murder case, the jury is entitled to presume the specific intent that is an element of the crime from the act of killing. State v. Colbert, 58 Mont. 584, 591, 194 P. 145. In that case this Court said:

" * * * The rule in other cases in which a specific intent is a necessary element of the crime is that the prosecution is required to prove it, or, what is equivalent, circumstances from which the jury may properly infer such intent. In such cases the propriety of giving the instruction is at least questionable. * * * But in murder cases, section 9282, supra [94-7212, R.C.M. 1947] dispenses with the necessity of evidence showing such intent, leaving it to be supplied by the presumption arising from the proof of the act of killing. Whatever, therefore, may be said of the propriety of the giving of the instruction in cases of manslaughter * * * as this is a murder case, the giving of the instruction was entirely proper." (Emphasis supplied).

Although there is a split of authority in other jurisdictions whether this presumption applies to a case of first degree assault, Montana allows the presumption. State v. McLeod, 131 Mont. 478, 489, 311 P.2d 400. In that first degree assault case, this Court said:

" * * * With this fact established the law presumes that the defendant was sane at the time he committed the act; that defendant committed the unlawful act with an unlawful intent, and that defendant intended

- 12 -

the ordinary consequences of his voluntary
<u>act</u>. * * *"   (Emphasis supplied).

Defendant also objects to Court's Instruction No. 20
on the basis that it does not allow the jury to consider in-
toxication as it relates to the formation of specific intent,
but allows a presumption to arise and supply the missing finding.

In addition to what has been said heretofore concerning
the presumption of intent, we note that court's Instruction
No. 21 negates defendant's contention.  It states in part:

> "An intoxicated or drugged condition may be taken
> into consideration in determining the existence
> of a mental state which is an element of the offense
> * * *."

The instructions must be read as a whole and when so read, the
effect of intoxication on the specific intent required to consti-
tute the offense is clear and a correct statement of the law found
in section 94-119, R.C.M. 1947.

Defendant also claims that court's Instruction No. 26 was
prejudicial error.  That instruction reads:

> "You are instructed that a person is not res-
> ponsible for criminal conduct if at the time
> of such conduct as a result of mental disease or
> defect he is unable either to appreciate the
> criminality of his conduct or to conform his
> conduct to the requirements of law.
>
> "The terms 'mental disease or defect' does
> not include an abnormality manifested only by
> re-repeated criminal or otherwise antisocial
> conduct."

Defendant's objection on settlement of instructions was:

> "MR. RADONICH:  This is the statute and we would
> object, Your Honor, to Plaintiff's Proposed In-
> struction Number 32 on the grounds and for the
> reason that there is no evidence in the case
> that the Defendant is a re-repeated criminal.
> This goes to several criminal procedures.  This
> portion of the statute is to be used only where
> you have the persons who are mentally irrespon-
> sible.  This is not to be used in a case of this
> nature."

The substance of defendant's objection to this instruc-
tion on appeal is that the second paragraph of the instruction

- 13 -

suggests to the jury that defendant is a re-repeated criminal and therefore not entitled to the defense of mental disease or defect excluding responsibility.

We do not consider the instruction susceptible to such interpretation. The language of the instruction refers to "re-repeated criminal or otherwise antisocial conduct". It does not refer to a re-repeated criminal. It clearly and simply says that an abnormality manifested by such conduct standing alone does not constitute a "mental disease or defect". It is taken directly from section 95-501(b), R.C.M. 1947, which provides:

> "As used in this chapter, the terms 'mental disease or defect' does not include an abnormality manifested only by re-repeated criminal or otherwise antiocial conduct."

The instruction is a clear and correct statement of the law and unobjectionable.

Defendant objects to court's Instruction No. 11, which reads:

> "If the killing was unlawful only, manslaughter is the crime; add to the element of unlawfulness malice aforethought only, and the murder of the second degree is the crime; and, lastly, add deliberation to unlawfulness, and malice aforethought and murder of the first degree is the crime."

Defendant's objection on settlement of instructions was:

> "MR. RADONICH: The Defendant objects to Court's 3 on the grounds that it is an incomplete statement of the law in that it leaves out the defense prescribed by Section 94-2503."

The essence of defendant's objection on appeal is that the instruction is confusing because manslaughter was not defined as the unlawful killing of a human being, without malice, upon a sudden quarrel or heat of passion; and because the word "only" was used in defining manslaughter and second degree murder.

Concerning the first part of defendant's objection, i.e. that the instruction is confusing because it is not a complete statement of the law and other instructions must be referred to

- 14 -

in order to give it a clear meaning, in answer we simply quote

from State v. Brooks, 150 Mont. 399, 410, 436 P.2d 91:

> "The whole of the law on a subject cannot be given
> in one instruction.  In determining the effect of
> given instructions, all instructions must be con-
> sidered as a whole and if they fairly tender the
> case to the jury, the fact that one or more in-
> structions, standing alone, is not as full or as
> accurate as it might have been is not reversible
> error.  State v. Watson, 144 Mont. 576, 398 P.2d
> 949; State v. Stoddard, 147 Mont. 402, 412 P.2d
> 827; State v. Noble, 142 Mont. 284, 384 P.2d 504"

Answering the second part of defendant's objection, we

simply note that the word "only" was not used to minimize the

quantum of proof needed for the state to carry its burden as in

State v. Taylor, 163 Mont. 106, 515 P.2d 695, but was used to

distinguish the different degrees of homicide.  It is unobjection-

able in this context and a correct statement of the distinction.

Defendant next claims reversible error in admitting in

evidence the testimony of Steve Foundation and Jerry Schnaible

that Ruby Judd identified defendant as the person who shot her.

Ruby Judd's oral statement was made within a short time after

she was shot, while she was still lying on the floor grievously

wounded.  While we agree defendant's contention that the state-

ment is inadmissible as a dying declaration for lack of a proper

foundation, we hold the statement admissible as part of the res

gestae.

The law of Montana with respect to the res gestae excep-

tion to the hearsay rule is summarized in this language from Sulli-

van v. Metropolitan Life Insurance Co., 96 Mont. 254, 266, 29

P.2d 1046:

> "Declarations made while the mind of the speaker
> is laboring under the excitement aroused by the
> accident, before there was time to reflect and
> fabricate, are admissible.  Such statements need
> not be entirely contemporaneous with the main
> incident; they may be in the form of narrative.
> Yet, if circumstances show they were made while
> the excitement produced by the incident still

dominated the mind and was a producing cause,
they are nevertheless part of the main event
and competent."

The test of admissibility is stated in this language
from State v. Newman, 162 Mont. 450, 458, 513 P.2d 258:

"'Declarations made while the mind of the speaker
is laboring under the excitement aroused by the
accident, before there was time to reflect and
fabricate, are admissible.'"

The question of admissibility is left to the sound legal
discretion of the trial judge, and will be reversed on appeal
only in case of manifest abuse. State v. Medicine Bull, Jr.,
152 Mont. 34, 445 P.2d 916.

Here the facts fit the test of admissibility like a
glove and Judge Allen was correct in admitting the statement.

Finally defendant contends that the prosecution's repeated
attempts to refer to the killing of the two Akins constituted a
wilfull attempt to prejudice the jury against defendant.

After the county attorney's reference to the death of
the two Akins in his opening statement was ruled inadmissible,
the county attorney on three or four occasions in examining wit-
nesses asked questions such as these: "And, what did you find
at the bunkhouse?" "And whatever happened to Sam (Akins)?" "Do
you know where Sam and Steve Akins are now?" On each occasion
defendant's counsel objected and was sustained before the witness
answered.

Following conviction the trial judge denied defendant's
motion for a new trial. We consider such conduct to fall far
short of reversible error, particularly where the trial judge
did not consider it significant enough to warrant a new trial.
The guilt of defendant to the crimes charged was clear. It was
common knowledge that the two Akins were killed at the same time.
The jury was instructed:

"In your deliberations you will only consider the

- 16 -

testimony of the witnesses upon the witness stand and such exhibits as have been admitted in evidence. No juror shall allow himself to be influenced by anything which he may have seen or read outside of the evidence and exhibits received by the Court during the course of this trial."

A measure of the lack of significance of this alleged error is found in the failure of the defendant to move for a mistrial, submit an additional cautionary instruction, request the court to admonish the county attorney in the presence of the jury, or take any further corrective action.

For the foregoing reasons, we affirm the judgment of conviction and denial of defendant's motion for a new trial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 17 -