No. 14824

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

DALE A SHERIFF,

Defendant and Appellant.

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Stacey and Nye, Billings, Montana
Calvin J. Stacey argued, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
John Maynard argued, Assistant Attorney General,
Helena, Montana
Harold Hanser, County Attorney, Billings, Montana

Submitted: February 20, 1980

Decided: APR 2 8 1980

Filed: APR 2 8 1980

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal arising out of defendant's conviction of the crimes of attempted deliberate homicide and aggravated burglary in the District Court of the Thirteenth Judicial District, in and for the County of Yellowstone, the Honorable Charles Luedke presiding.

The facts as presented by the parties upon appeal are the following:  On the night of June 26, 1978, Ms. Joyce Ann Lamb awoke in the bedroom of her Billings, Montana, residence to find a man standing beside her in the dark.  She immediately screamed at the sight of the man, and the man, in response also screamed. The man then proceeded to her bed and positioned himself so that he was straddled over her. In an effort to seek the help of her neighbors, Ms. Lamb began hitting her hand against the wall.  The man then struck her and continued striking her for approximately one minute, at which time he raised up, backed against a closet, stood and looked at her, and finally turned and ran out of the room.  The man apparently had difficulty in leaving the residence, because Ms. Lamb heard him hit something as he went through the back door.  At this point, Ms. Lamb realized that she was bleeding.  She left her house, sought help from her neighbors, and was taken to the hospital, where it was determined that she suffered 11 stab wounds in total.

Sometime later, an officer of the Billings Police Department stopped the defendant after a tip had been obtained from one of Ms. Lamb's neighbors that a man had just been seen peeking into her windows.  The defendant was asked for his identification, and, after some brief questioning,

was released. At the time of the stop, defendant had a knife attached to his belt. Defendant's residence was later searched by the police pursuant to defendant's consent. Upon the basis of the search, defendant was taken into custody and advised of his constitutional rights. At the police station, defendant gave a statement to the police which reflected that he had been at Ms. Lamb's residence that night, but that he could not remember hitting her or stabbing her, or, for that matter, having any involvement in the crime. Defendant also stated that he did have a knife, that he always carried it with him, and that he washed it off and placed it in a drawer underneath the television after returning home that night.

Defendant was charged by information on July 5, 1978 with the crimes of attempt (deliberate homicide) and aggravated burglary. Defendant entered a plea of not guilty to both charges, and trial was held on February 26, 1979. The jury returned a verdict of guilty with respect to both charges, and defendant was sentenced to a 50 year sentence for the crime of attempt and a 20 year sentence for the crime of aggravated burglary, said terms to be served concurrently. From these judgments, defendant appeals.

Defendant originally raised two issues for our consideration upon this appeal. However, during oral argument, counsel for defendant admitted that one of these issues had been resolved by this Court in a prior decision. Thus, we find it only necessary to consider the remaining issue-- whether the trial court erred in giving the following instruction to the jury:

> "If you find that the defendant, Dale A. Sheriff, attempted to commit a homicide and no circumstances of mitigation, excuse or justification

appear, then you may infer that the attempted homicide was committed knowingly or purposely."

At the outset, we note two observations with respect to the above instruction. The first is that the instruction goes only to the crime of attempted deliberate homicide and not to the crime of aggravated burglary. Defendant's conviction of the latter charge must, therefore, stand. The second is that we have previously decided in another case that an instruction identical to the one challenged here was not error in the context of other instructions given. See, State v. Coleman (1979), ____ Mont. ____, ___ P.2d ____, 36 St.Rep. 2237. Although Coleman may therefore have persuasive application to this case, there still remains the need for this Court to independently determine the effect of the challenged instruction in the context of the instructions given here.

Defendant's sole contention upon this appeal is that the instruction, on the basis of Sandstrom v. Montana (1979), ____ U.S. ____, 99 S.Ct. 2450, 61 L.Ed.2d 39, has the effect of relieving the State of its burden to prove each and every element of the offense beyond a reasonable doubt or shifting the burden of proof to the defendant.

The threshold inquiry in ascertaining whether the State has been relieved of its burden of proof, according to the United States Supreme Court in Sandstrom, requires "careful attention to the words actually spoken to the jury . . . for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable jury could have interpreted the instruction." Sandstrom, 99 S.Ct. at 3453, 61 L.Ed.2d at 45. In Sandstrom, the jury was instructed that "the law presumes that a person intends the ordinary consequences of his voluntary acts." This instruction

-4-

related to a presumption of law and was mandatory by its very terms. There was no discretion allowed on the part of the jurors. In contrast, the jurors were told here that they "may infer" a material element of the crime, namely that the attempted homicide was committed knowingly or purposely. This instruction referred to an inference of fact and was, by its express terms, permissive. Ulster County Court v. Allen (1979), ___ U.S. ____, 99 S.Ct. 2213, 60 L.Ed.2d 777. The jurors were given discretion with respect to the finding of intent and were free to follow or not to follow the instruction. The language of the instruction, did not involve either a conclusive or burden-shifting presumption, as was involved in Mullaney v. Wilbur (1975), 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508; Sandstrom, supra; or Morrissette v. United States (1952), 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288. Nor did the instruction have the effect of allocating to the defendant some part of the burden of proof that properly rested on the State throughout the trial.

That the burden remained on the State in proving the elements of the offense is made clear by the other instructions given by the trial court in this case. On appeal, we consider the instructions as a whole. State v. Farnes (1976), 171 Mont. 368, 558 P.2d 472.

> "The whole of the law on a subject cannot be given in one instruction. In determining the effect of given instructions, all instructions must be considered as a whole and if they fairly tender the case to the jury, the fact that one or more instructions, standing alone, is not as full or accurate as it might have been is not reversible error. [Citations omitted.]" State v. Caryl (1975), 168 Mont. 414, 430, 543 P.2d 389, 398.

Here, Instruction No. 21 stated that, in order to sustain the charge of attempted deliberate homicide, the State had to prove intent as one of the elements of the offense. Instruction No. 2 provided that the defendant was afforded a presumption of innocence and that the burden of proof was upon the prosecution to establish every material allegation of the information beyond a reasonable doubt. Instruction No. 5 reiterated the defendant's presumption of innocence. Instruction No. 10 stated that the defendant could not be convicted on conjecture, probability or suspicion, but rather only on evidence which established his guilt beyond a reasonable doubt. Instruction No. 12 stated in pertinent part:

> "In order to prove the charge of COUNT I: ATTEMPT (FELONY) and COUNT II: AGGRAVATED BURGLARY as alleged in the Information, the State must prove beyond a reasonable doubt that each element of the offense, all necessarily included offenses, was committed or perpetrated knowingly by the defendant as a voluntary act.
>
> ". . .
>
> "Purpose or knowledge are manifested by the circumstances connected with the offense and need not be proved by the direct evidence but may be inferred from acts, conduct, and circumstances appearing in evidence.
>
> "There are two classes of evidence recognized and admitted in courts in the State of Montana. One is 'direct evidence,' the other is 'circumstantial evidence.' In 'direct evidence' the witnesses testify directly of their own knowledge of the main fact or facts to be proved, while 'circumstantial evidence' is the proof of certain facts and circumstances in a given case from which the jury may infer other connecting facts which usually and reasonably follow according to the common experiences of mankind. . ."
> (Emphasis added.)

Instruction No. 7 also provided:

> "Where the case of the State rests substantially or entirely on circumstantial evidence, you are not permitted to find the defendant guilty of any crime charged against him unless the proved

circumstances are not only consistent with the theory that the defendant is guilty of the crime, but cannot be reconciled with any other rational conclusion and each fact which is essential to a complete set of circumstances necessary to establish the defendant's guilt has been proved beyond a reasonable doubt.

"Also, if the evidence, as to any particular count, is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject the other which points to his guilt.  If, on the other hand, one interpretation of the evidence appears to you to be reasonable and the other interpretation unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

Defendant submits, however, that these instructions were nevertheless inadequate.  He argues that, while the jury was instructed that they could infer intent from the acts, conduct, or circumstances appearing in evidence, the jury should have also been instructed that they need not make such inference.  Apparently, defendant's argument is that this qualification should have been included as an addendum to the challenged instruction or submitted as an entirely separate instruction. In support defendant relies on State v. Bryant (Tenn. 1979), 585 S.W.2d 586; and State v. Roberts (Wash. 1977), 562 P.2d 1259.

We disagree.

In Roberts an instruction was given to the jury creating a presumption of second-degree murder where no excuse or justification appeared.  The court held in that case that, where an instruction was silent as to how the presumption might be overcome, the jury should be further instructed regarding the clear operation of the presumption. Roberts, 562 P.2d at 1261-62.  In Bryant an instruction was given to the effect that, if a person entered the premises of another disguised or in mask, the jury could consider that act as

-7-

prima facie evidence of the person's intent to commit a felony. The court held that the inclusion of that instruction was error where no express instructions were given as to the effect of the inference.  Bryant, 585 S.W.2d at 590.

We find here that there was no duty on the part of the trial court to submit any qualifications or additions to the instructions which were given, because the terms of the instructions made clear the effect and operation of the inference.  As such, this case is distinguishable.  Bryant and Roberts do not control.  The jury was told in very explicit terms by Instruction Nos. 7 and 12 what kind of evidence could be considered in making the inference and what kind of logical steps were permissible to take.  Instruction No. 12 allowed the jury to infer purpose or knowledge from circumstantial evidence submitted by the State.  Instruction No. 7 further directed the jurors that, where circumstantial evidence is susceptible of two reasonable interpretations, and one of the interpretations points to defendant's innocence, they should find the defendant innocent. These instructions, taken together with other instructions regarding defendant's presumption of innocence and the State's burden of proof, made clear the operation and effect of the inference.

We find, therefore, that the trial court properly instructed the jury and that there was no error.  The language of the challenged instruction was permissive.  The words "may infer" connoted in plain terms and in plain understanding to the jurors that they had discretion to follow or not to follow the instruction.  Further, the operation and effect of the inference was clearly explained to the jury.  The instruction did not have the effect of

-8-

allocating to the defendant some part of the burden of proof that properly rested on the State throughout the trial. Accordingly, the judgment of the District Court is affirmed.

_____
                Justice

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices

Mr. Justice Daniel J. Shea dissents and will file a written dissent later.