No. 79-50

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

CARL ROGER LUNDBLADE,

Defendant and Appellant.

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Lake.
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

K.M. Bridenstine argued, Polson, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Allan Chronister argued, Assistant Attorney General,
Helena, Montana
Richard P. Heinz argued, County Attorney, Polson, Montana

Submitted: January 13, 1981
Decided: MAR 24 1981

Filed: MAR 24 1981

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant Carl Roger Lundblade appeals from a felony theft conviction, following a jury trial in District Court, Lake County. We reverse the conviction and remand the cause to District Court for a new trial.

The defendant operated a diesel repair shop in Polson, Montana, for a time prior to his arrest in December 1978. One of his regular customers was the complaining witness in this case, Warren G. Harding, d/b/a Mission Valley Concrete Industries, Inc. In April 1978, one of Harding's trucks blew an engine. Defendant installed a new engine for Harding, using several parts from the blown engine. Harding apparently wanted to get the engine repaired, but Lundblade determined that the blown engine could not be fixed and simply kept it at his shop.

Shortly after this engine work was done, defendant posted a notice in his shop that he was increasing his hourly rate to $16/hour in-shop and $17.50/hour out-of-shop. Mr. Harding, who had been paying $10/hour, advised Lundblade that he could not pay the new rates. Conflicting testimony was presented at trial as to the outcome of this discussion. Harding testified that Lundblade agreed to continue to charge him at the $10 hourly rate; Lundblade testified that it was agreed that Harding would get a "break" and $14 an hour straight across the board was agreed upon.

Despite this dispute over rates, Lundblade continued to do miscellaneous repair work for Harding in June, July, and August 1978. By early September, Harding's bill totalled $2,624. Harding paid $1,000 but refused to pay any more, indicating that he was "getting a runaround on [the] work."

After several unsuccessful attempts to collect the bill, Lundblade contacted a Polson attorney to assist him in making the collection. After several letters back and forth between

Harding's and Lundblade's attorneys, defendant contends that he requested his attorney to file suit, but no action was taken. Lundblade testified that on advice of counsel, he held the engine to protect his cause of action. He also testified that he understood that if he sold the engine, the debt would be extinguished and he would no longer have grounds to file suit.

In November 1978, Lundblade contacted Wendell Jones in Missoula concerning a sale of his equipment and the engine because he was forced to go out of business. A sale of the equipment and engine was consumated on November 27, 1978. Jones testified that $750 was allocated to the purchase price of the engine; Lundblade testified that $600 represented the price for the engine. Both testified that it would cost more to rebuild the engine than it would to purchase a used engine. Jones testified that the $750 price was "more than fair."

Lundblade testified that it was standard practice in the repair business to sell a customer's property if an account could not be collected. He admitted that he wrote off the entire balance owing, although he did not inform Mr. Harding of this until after he was arrested in December 1978 for felony theft of the disassembled engine.

We find that defendant's conviction must be reversed because improper jury instructions denied him a fair trial. The remaining issues raised by the parties need not be addressed in this opinion as they will not arise on retrial.

The jury instructions constituted reversible error for two reasons: (1) the jury was not advised of the statutory elements of the crime, and (2) the jury was instructed on defendant's civil remedy of an agister's lien, permitting the inference that he was guilty of theft for failure to pursue that remedy.

The State contends that we should not consider the question of failure to give an "elements of the crime" instruction, citing well-settled principles of appellate review.

The State correctly points out that failure to object at trial to the giving or refusal to give a jury instruction normally renders the issue nonappealable. State v. Harvey (1979), ____Mont.____, 603 P.2d 661, 665, 36 St.Rep. 2035, 2038, and the record here shows that appellant never offered an instruction setting out the elements of the crime. But this Court has indicated that in some situations we will nonetheless review jury instructions "for the purpose of determining whether or not the jury was properly instructed." State v. Watson (1965), 144 Mont. 576, 582, 398 P.2d 949, 952. In this case, because we determine that failure to instruct on the elements of the crime constitutes "plain error" pursuant to section 46-20-702, MCA, we will take cognizance of the jury instruction question. State v. Poncelet (1980), ____Mont.____, 610 P.2d 698, 702, 37 St.Rep. 760, 763.

At a minimum, the District Court must explain or define the crime for the jury. State v. Campbell (1972), 160 Mont. 111, 114, 500 P.2d 801, 803. In determining whether the instructions did this, we are guided by certain settled principles. First, we must view the instructions as a whole, State v. Caryl (1975), 168 Mont. 414, 430, 543 P.2d 389, 398, and we will find no error if the instructions as a whole fully and fairly instruct on the law applicable to the case. State v. Higley (1980), ____Mont.____, 621 P.2d 1043, 1054, 37 St.Rep. 1942, 1953; State v. Campbell, supra, 160 Mont. at 116, 500 P.2d at 804.

The State contends that the instructions as a whole adequately apprised the jury of the substantive law applicable to this case. We disagree. Even considering Instructions Nos. 5, 6, 8, and 11, as the State urges us to do, we are unable to determine that the jury knew that the State had to prove every element of the crime beyond a reasonable doubt.

The pertinent portions of the instructions as given provide as follows:

> " . . . in order to convict him of the crime
> charged, every material fact or element

necessary to constitute the crime must be proved by the State of Montana by competent evidence beyond a reasonable doubt; and, if the jury entertains a reasonable doubt on any fact or element necessary to constitute the crime charged, it is your duty to give the defendant the benefit of such doubt and acquit." (No. 5)

"In every crime or public offense the State must establish each element described by the statute defining the offense, and the State must further establish that the Defendant acted while having the mental state required by the statute defining the offense." (Emphasis added.) (No. 6)

"In this case the Defendant has been charged with committing the crime of THEFT, committed as follows, to-wit: That on or about November 27, 1978, at the County of Lake, in the State of Montana, the Defendant, CARL ROGER LUNDBLADE, purposely or knowingly obtained or exerted unauthorized control over property, to-wit: one GMC 6V 53 diesel engine model number 6V 53N, of a value of more than One Hundred Fifty Dollars ($150.00) owned by Mission Valley Concrete Industries, Inc., with the purpose of depriving the owner of the property."

" . . .

"The statutes under which this Information is filed, and the Defendant charged, or as many as are applicable in this particular case, are given in the following instructions." (No. 8)

[We note that no further instructions were given concerning the statutes under which the Information was filed, or under which the defendant was charged.]

"Reasonable doubt is not a mere possible doubt, because everything relating to human affairs, and depending on evidence, is open to some possible or imaginary doubt. A reasonable doubt exists when you jurors cannot say that you feel an abiding conviction to a moral certainty of the truth of the charge." (No. 11)

In these instructions, the jury was told that each element of the crime as defined by statute had to be proved (No. 6), but the jury was never instructed as to the statutory elements of the crime. Although the jury was instructed that the defendant was charged with theft as described in the Information (No. 8), nowhere was the jury advised that the Information set out the material elements of the crime, each of which the State had to prove beyond a reasonable doubt. Perhaps some or all of the

- 5 -

jurors inferred that the Information set forth the statutory elements of the crime, but we have no way of determining this. Without a correct statement of the elements of the crime being presented to the jury we cannot say that the defendant received a fair trial.

We find error also in the District Court's giving of Instruction No. 9, to which defendant did object at trial. This instruction set out the procedure by which defendant could have filed an agister's lien against Harding in order to collect on his bill. It instructed the jury on defendant's civil remedy, an instruction which defendant argues has no place in a criminal trial. Lundblade was being tried for theft, and not for failure to follow his civil remedy.

The State contends that the instruction was necessary to bring order to the evidence presented at trial. According to the State, the defendant argued to the jury that he had a right to rely on the agister's lien, and a right to hold on to Harding's property. While we agree with the State that defendant may have introduced irrelevant evidence concerning the lien, we do not find this to be a justification for giving this jury instruction. The State had the opportunity to object to this testimony and to have it stricken from the record. In failing to do this, the State cannot then attempt to respond to this evidence through improper jury instructions.

We have previously stated our disapproval of giving to a jury abstract rules of law that are inapplicable to the case. State v. Reiner (1978), ____Mont.____, 587 P.2d 950, 955, 35 St.Rep. 1861, 1866; State v. Trosper (1910), 41 Mont. 442, 446, 109 P. 858, 859. If, however, we find that the jury could relate the concept presented in the instruction to the facts, and there is no prejudice to the defendant in giving the instruction, we will not find reversible error. Reiner, supra. In this case the jury could have inferred that by failing to pursue the proper

civil remedy, the defendant committed the crime of theft. This is clearly misleading and not a correct statement of the law of theft. The district judge erred in giving this instruction.

Based on the forgoing, we reverse the conviction and remand the cause for a new trial. We decline to reverse and dismiss, based on our finding that there is evidence in the record to support the conviction. State v. Johnson (1978), 177 Mont. 182, 188, 580 P.2d 1387, 1390; State v. Langan (1968), 151 Mont. 558, 568, 445 P.2d 565, 570.

Several other issues deserve comment before a retrial of this case. Although we do not find reversible error in Instruction No. 10, we note that it has no relevance to the case and it should not have been given. Instruction No. 10 set out a defense which defendant never raised. Although defendant may have believed that his conduct did not constitute an offense, he did not attempt to defend the charge by the means set out in instruction 10, taken from section 45-2-103(4), MCA. That instruction involves reliance on unpublished rules or regulations, statutes later declared invalid, court decisions later overturned or interpretations of the law made by a public person authorized to do so. Where, as here, the instruction has no relevance to the case, it serves no purpose but to confuse the jury. An instruction should not be given if it is not relevant nor material to the evidence or issues in the case. State v. Brooks (1967), 150 Mont. 399, 411, 436 P.2d 91, 97.

Last, we caution the District Court about giving an instruction such as No. 6:

> " . . . The law also presumes that a person intends the ordinary consequences of any voluntary act committed by him. This presumption, however, is termed a disputable presumption and may be controverted by other evidence."

In the recent case of Parker v. Crist (1980), ____Mont. _____, 621 P.2d 484, 37 St.Rep. 2048, we approved the use of the same instruction, under the circumstances of that case. There we

found that the error, if any, in giving the instruction was harmless beyond a reasonable doubt. Parker, ___Mont.___, 621 P.2d at 487, 37 St.Rep. at 2050. But we cannot say that the circumstances making the instruction permissible in Parker occurred in the instant case, nor do we know for certain that the United States Supreme Court would find this instruction to be constitutional in this case in light of Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39. Thus we urge the District Court to avoid this instruction in a retrial of this case.

The conviction is reversed and this cause is remanded to the District Court for a new trial.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices