No. 80-284

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JOSEPH RUBEN BUCKMAN,

Defendant and Appellant.

_____

Appeal from:  District Court of the Eighth Judicial District,
In and for the County of Cascade.
Honorable John McCarvel, Judge presiding.

Counsel of Record:

For Appellant:

Marcia Birkenbuel, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana

_____

Submitted on briefs: April 8, 1981

Decided:  **JUL  2 1981**

Filed: **JUL 2 - 1981**

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Buckman appeals Cascade County District Court convictions for aggravated kidnapping and aggravated assault.

During the early morning hours of October 29, 1979, defendant Buckman was observed in the parking area of the Heritage Inn in Great Falls, Montana. A Walker Security patrolman stopped and questioned defendant, whereupon defendant drew a handgun out of his pocket and fired a shot in the direction of the patrolman.

During this incident a milk truck, driven by Lyle Mahon, approached the security patrolman's car. As Mahon got out of the truck, he encountered Buckman. Defendant forced Mahon into the security car holding the pistol to Mahon's head.

Soon thereafter another Walker Security officer appeared on the scene, as did several Great Falls police officers. Defendant Buckman ordered Mahon to tell the officers not to approach the security car or he would kill him. For twenty minutes, defendant held Mahon captive in the security car. He then surrendered and was taken into custody.

Defendant Buckman raises three issues for this Court's review:

1. Was defendant convicted of, and sentenced for, two separate offenses arising out of a single act in violation of section 46-11-502, MCA?

2. Did the trial court fail to follow the statutory requirements of section 46-14-202, MCA?

3. Did the trial court err in refusing to instruct

-2-

the jury of the disposition of a defendant who is acquitted by reason of mental disease or defect?

Section 46-11-502(1), MCA, provides that a person may not be convicted of two offenses that are part of the same transaction if one offense is included in the other. An "included offense" is defined as one which "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Section 46-11-501(2)(a), MCA.

Buckman argues that in the present case the same fact used to establish the aggravated assault charge is also used to establish the restraint by use, or threat to use, physical force element of aggravated kidnapping. An additional fact is necessary to prove the aggravated kidnapping charge--that is, the purpose to hold the victim as a shield or hostage. Therefore, he concludes, the aggravated assault charge is established by the same or less than all the facts required to prove the aggravated kidnapping charge, and it must be considered an included offense as charged in the present case.

The question of when an offense is included in another under the terms of a statutory prohibition against multiple convictions or punishments for the same act has been considered and evaluated under two basic tests cited by defendant, but the State properly takes issue with defendant's reliance on case law from Arizona, Oregon, California and Illinois. While these decisions may be an accurate recital of the law in those jurisdictions, under current Montana statutes and case law, the trial judge did not err in imposing sentences against defendant on both

charges of which he was convicted.

In State v. Close (1981), ____ Mont. ____, 623 P.2d 940, 38 St.Rep. 177, 189, we found that section 46-11-502, MCA, is merely a codification of the standard enunciated in Blockburger v. United States (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. See also State v. Coleman (1979), ____ Mont. ____, 605 P.2d 1000, 1009-1010, 36 St.Rep. 1134. In Blockburger, the Court ruled:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. (Emphasis added.)

The application of the Blockburger analysis to the statutes in question here make it clear that defendant could properly be convicted and sentenced for both offenses charged. As defined in section 45-5-202(1)(c), MCA, a conviction for aggravated assault requires proof that a person (1) purposely or knowingly (2) caused reasonable apprehension of serious bodily injury in another (3) by use of a weapon. As applicable in this case, aggravated kidnapping requires proof that the person charged (1) knowingly or purposely and without lawful authority (2) restrained another person (3) by using or threatening to use physical force (4) with the purpose of holding the victim as a shield or hostage. Section 45-5-303(1)(a), MCA.

Under these statutes the charge of aggravated assault may be proved without a showing of restraint or the intent to hold another as a hostage or shield. Similarly, the offense of aggravated kidnapping does not entail the victim's apprehension of serious bodily injury or use of a

-4-

weapon by the accused. Thus, each charge requires proof of facts which the other does not; therefore, neither offense merges with or is included in the other under Blockburger and section 46-11-502, MCA.

Buckman also maintains that section 46-11-502(4), MCA, prohibits conviction of both offenses in the present case. It provides that when more than one offense is established by the same transaction, a person may not be convicted of more than one offense if "the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." Buckman argues that aggravated assault prohibits the use of force generally and aggravated kidnapping is defined to prohibit the use of such force specifically to restrain a person for purposes of a hostage or shield. His conclusion is that since the assault charge prohibits a general behavior and the kidnapping charge prohibits the same behavior specifically, only one charge can be sustained. We disagree.

The conduct prohibited by the aggravated assault section pertinent to this case is causing a reasonable apprehension of serious bodily injury in another by use of a weapon. Section 45-5-202(1)(c), MCA. The conduct prohibited by the aggravated kidnapping statute is restraining another by using or threatening to use force of any kind. Section 45-5-303(1)(a), MCA. Aggravated kidnapping is, therefore, not merely a more specific form of aggravated assault, but an entirely separate crime, with its own specific elements differing substantially from those in the aggravated assault statute.

Buckman next argues that the language of section 46-14-202, MCA, mandates either the appointment of a specific psychiatrist or the request to have one designated by Warm Springs State Hospital whenever there is reason to doubt a defendant's fitness to proceed or reason to believe that mental disease or defect of a defendant will otherwise become an issue in the case.

Section 46-14-202, MCA, provides:

"When there is reason to doubt the defendant's fitness to proceed or reason to believe that mental disease or defect of the defendant will otherwise become an issue in the cause, the court shall appoint at least one qualified psychiatrist or shall request the superintendent of Warm Springs state hospital to designate at least one qualified psychiatrist, which designation may be or include himself, to examine and report upon the mental condition of the defendant."

In the present case defendant filed a notice of intent to rely on the defense of mental disease or defect to prove that he did not have a particular state of mind which is an essential element of the offenses charged. He also presented the testimony of Charles Jones, Clinical Psychologist with the North Central Montana Community Mental Health Center. Jones stated that his meetings with Buckman revealed various symptoms which gave him reason to believe Buckman was suffering from a mental illness.

Defendant asserts that this testimony and the notice gave the court reason to believe that mental disease or defect would be an issue in the case. In Buckman's view the court had only two options under the mandatory language of section 46-14-202, MCA, neither of which were chosen. Therefore, defendant concludes, the court erred in its denial of his motion for examination pursuant to the

requirements of section 46-14-202, MCA.

As a preliminary matter we note that section 46-14-202(2), MCA, goes on to provide that the court may order a defendant to be committed to a hospital or "other suitable facility" for psychological examination. This Court is not persuaded that the District Court failed to fulfill any judicial function or directive in sending Buckman to the state prison for examination. Buckman presents no evidence that the prison facility is unsuitable for such a purpose.

We find the argument that the court's order was deficient because it failed to name a particular psychiatrist an exaltation of form over substance. There is no question that defendant was examined by a qualified psychiatrist, who, along with a psychologist, filed a detailed report of defendant's mental condition.

This issue closely resembles that posed in State v. Kyle (1980), ___ Mont. ___, ___ P.2d ___, 37 St.Rep. 1447, in which the defendant attacked the legitimacy of a report from Warm Springs on the ground that the order of the court appointed the superintendent to examine him, but some of the tests were actually conducted by others on the staff. This Court rejected the defendant's technical attack on the report. 37 St.Rep. at 1449-1450.

We find Kyle persuasive here. The spirit of the statute is to have a qualified professional examine a defendant for the purposes of evaluation. Where that spirit is substantially fulfilled, as here, we can find no substantial interference with a defendant's rights and, thus, no reversible error. Section 46-20-701, MCA. See also State v. Olsen (1980), ___ Mont. ___, 614 P.2d 1061,

37 St.Rep. 1313.

Further, we take note of the fact that, at the time the motion regarding mental examination was denied, the District Court had received the report of a qualified psychiatrist and psychologist indicating that defendant was not suffering from a mental disease or defect at the time the crimes were committed. At that point the judge had no "reason to doubt" defendant's competence or sanity. To raise such a doubt, defendant presented the testimony of a psychologist who stated that he did not agree with some of the language in the report but who also admitted that he had not personally examined defendant. Based on the order that followed, it is clear that the judge, who had the opportunity to review the report and personally listen to the witness, did not accept this testimony as calling the original report into question.

Defendant's final issue attacks the District Court's refusal of a proposed jury instruction which read:

> "When a defendant is acquitted on the ground that due to a mental disease or defect he could not have a particular state of mind that is an essential element of the offense charged, the court shall order him committed to the custody of the superintendent of Warm Springs state hospital to be placed in an appropriate institution for custody, care, and treatment." (See section 46-14-301, MCA).

The State objected to this instruction, relying on State v. French (1975), 166 Mont. 196, 531 P.2d 373. The objection was sustained, and the instruction refused.

This Court, in French, determined that it was not error for the trial court to refuse to instruct the jury that a person acquitted by reason of mental disease or defect shall be committed to the State Hospital at Warm

-8-

Springs. The Court's rationale was stated as follows:

> "The jury's function is to determine the facts relevant to guilt or innocence. It should not concern itself with alternatives available to the court following the verdict." 166 Mont. at 205.

Buckman begins his argument by pointing out that French was decided in 1975 before the changes in the mental competency chapter of the Montana Criminal Procedure Code, enacted in 1979. Under the old law, the determination of criminal responsibility could be made in either of two ways. Section 46-14-211, MCA, provided for a summary-type determination in which the court could enter a judgment of acquittal on the ground of mental disease or defect excluding responsibility without holding a trial. The second method was to have the issue of mental disease or defect decided at trial along with the general issues of the case.

The 1979 law repealed the summary determination provided in section 46-14-211, MCA. The issue must now be decided at trial in every case. Therefore, the jury's role in determination of this issue is greatly increased.

For that reason, Buckman asserts that the rule of Lyles v. United States (D.C. Cir. 1957), 254 F.2d 725, which was rejected in French, should be reviewed. In Lyles, the court believed that the jury has a right to know, as part and parcel of their fact-finding role, the meaning of an acquittal verdict based on an insanity defense. See also 11 A.L.R.3d 737.

Buckman further argues that the failure to instruct as to the consequences of the not guilty by reason of mental disease or defect verdict was particulary prejudicial in the

present case. In the prosecuting attorney's closing argument, he told the jury:

> "I suggest that you must also be able to live with the acquittal based upon what you know this man did, if you acquit him and turn him loose, you must also be able to live with that." (Emphasis defendant's.)

Defendant argues that this statement compounds the jury's misunderstanding of the not guilty by reason of mental disease or defect verdict and that this misunderstanding can only be prevented by instruction as to the statutory provision for commitment following such a verdict.

We do not believe that the Lyles rule is consistent with Montana law or made consistent by virtue of the 1979 amendments to the mental competency law. Nor do we find that the State's comments in this case make it specially susceptible to a Lyles analysis.

We have consistently held that the function of the jury in this State is to determine the facts relevant to guilt or innocence. State v. French, supra. Accord, State v. Caryl (1975), 168 Mont. 414, 426, 543 P.2d 389, 396.

We reaffirm that the jury's purpose and duty go no further and should not be involved with the consequences of the verdict they are charged to render. Although, according to defendant, there is no longer a provision allowing the judge to determine the existence of a mental disease or defect without a trial, the statutory changes have increased the jury's role on this issue. This contention overlooks the fact that both French and Caryl involved jury trials, not summary dispositions by the presiding judge. Therefore, the existence of the cited alterations in the statutes has

no effect whatsoever on the earlier holdings of this Court on the propriety of the offered instruction.

Our review of the record reveals that during the defense summation, defendant's lawyer stressed to the jury the theory that defendant was suffering from a mental disease or defect and that he should therefore be given an opportunity for treatment, rather than being convicted. She also pointed out specifically to the jury that they would have to live with a conviction.

Thus, taken in context, it is clear that the prosecutor's remark was nothing more than a legitimate response to the earlier exhortations of defense counsel. In light of that fact, any error caused by the State's comment is made harmless when the record is considered in its entirety.

Affirmed.

_John Conway Harrison_
Justice

We concur:

_Frank L. Haswell_
Chief Justice

_Jean S. Daly_

Justices

Mr. Justice Frank B. Morrison, Jr., concurring:

I concur in the result reached by the majority. However, I take exception to that language in the majority opinion which gives sanction to the prosecuting attorney's closing argument.

As pointed out in the majority opinion, the prosecutor told the jury:

> "I suggest that you must also be able to live with acquittal based upon what you know this man did, if you acquit him and turn him loose, you must also be able to live with that."

This statement was made in response to a defense argument that the defendant should be given an opportunity for treatment. The majority finds the prosecutor's statement to be a legitimate response to the defense argument.

If the prosecutor's statement was made in response to a defense argument regarding the consequences of acquittal based upon mental disease or defect, then the prosecutor's argument was improper. Although the defense went outside the record, the defense accurately informed the jury about the consequence of a mental disease acquittal. If the prosecutor was responding to such an argument, the prosecutor falsely informed the jury that such an acquittal would result in the defendant being turned loose. Though both comments went outside the record, the defense statement was true while the prosecutor's was false.

I realize that the statement made by the prosecuting attorney can be justified on the basis that an outright acquittal of the defendant would have the effect of freeing the defendant. Nevertheless, the statement is misleading, and when made in response to the defense argument regarding mental disease or defect, would tend to create a false impression in the minds of the jurors.

A prosecuting attorney has a far different ethical role than an attorney prosecuting a civil action. The prosecuting attorney represents the people and should always strive to present the case objectively. The prosecutor's closing argument in this case is improper when viewed in context of the obligation owed.

Defense counsel did not move for a mistrial and only argues err in the trial court failing to instruct the jury on the consequences of an acquittal based upon mental disease or defect. Under these circumstances, I concur with the affirming verdict. However, I do hereby intend to express strong sentiment against improper jury argument and, if the proper record is made, will tend to view prejudicial arguments as reversible error.

_____
                    Justice

I concur with Mr. Justice Morrison.

_____
                    Justice

-13-